*Fee Paid*
*#4*
*B/77*

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEAN FRIEND, individually and on behalf of his minor child, HEF; SANDRA FRIEND, individually and on behalf of her minor children ERM and HEF
    *Plaintiffs,*

V.

KAY IVEY, Governor of the State of Alabama, Chairperson for Alabama State Board of Human Resources; NANCY T BUCKNER, Commissioner of the Alabama Department of Human Resources(ADHR); FELICIA BROOKS, Chief Legal Council For ADHR; REGINA JERNIGAN; ERIC FUNDERBURK, Attorney, Former Judge 26th Judicial Circuit Alabama; JO ANNA C PARKER, Guardian Ad Litem for SLF, Attorney; APRIL LOGAN-RUSSELL, Attorney; L JOEL COLLINS, Attorney; JUDGE ZACK COLLINS, Judge 26th Judicial Circuit Alabama; JUDGE MICHAEL BELLAMY, Retired Presiding Judge 26th Judicial Circuit Alabama; JODY SELLERS, Clerk of Courts 26th Judicial Circuit Alabama; JONI CAUTHEN, employee of Clerk's office 26th Judicial Circuit Alabama; VICKIE H WALLACE, employee of Clerk's office 26th Judicial Circuit Alabama; RICK CHANCEY, District Attorney 26th Judicial Circuit Alabama; LAUREL W FARRAR, Attorney; DEAMBER HOYLE, DHR employee Phenix City, Alabama; JUDGE LAURA TOCCI, Court of Common Pleas Judge Beaver County Pennsylvania; J DOE, Domestic Relations Attorney for Regina Jernigan provided by Beaver County Pennsylvania; GERALD BENYO JR, Attorney; NICHOLAS FRISK III, Attorney; JOSEPH CHESNUT Director of Domestic Relations Beaver County; FRANK PLATZ, Enforcement Officer of Domestic Relations Beaver County;
    *Defendants.*

Case No.

2:23-cv-1241

**FILED**

JUL 10 2023

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

1

## I.  PARTIES TO THIS COMPLAINT
### A.  THE PLAINTIFFS

1. Plaintiff No. 1
   Name                 Dean Friend
   Address              7607 Big Beaver Blvd
                        Wampum, PA 16157
   County               Beaver
   Telephone Number     (724)421-5616
   E-Mail Address       mccannenator@gmail.com

2. Plaintiff No. 2
   Name                 Sandra Friend
   Address              7607 Big Beaver Blvd
                        Wampum, PA 16157
   County               Beaver
   Telephone Number     (724)421-4739
   E-Mail Address       mccannenator@gmail.com

3. Plaintiff No. 3
   Name                 Minor Child ERM
   Address              % Plaintiff No. 2

4. Plaintiff No. 4
   Name                 Minor Child HEF
   Address              % Plaintiffs No. 1 & 2

### B.  THE DEFENDANTS

1. Defendant No. 1
   Name                 Kay Ivey
   Job or Title         Governor of the State of Alabama and Chairperson for
                        Alabama State Board of Human Resources;
   Address              600 Dexter Avenue
                        Montgomery, Alabama 36130
   County               Montgomery
   Telephone Number     (334)242-7100
   Email Address        *unknown*
                        _____Individual Capacity        _X__Official Capacity

2. Defendant No. 2
   Name                   Nancy T. Buckner
   Job or Title           Commissioner of the Alabama Department of Human
                          Resources
   Address                50 Ripley Street
                          P.O. BOX 304000
                          Montgomery, Alabama 36130
   County                 Montgomery
   Telephone Number       (334)242-1160
   Email Address          Nancy.Buckner@dhr.alabama.gov
                          _____Individual Capacity        _X__Official Capacity

3. Defendant No. 3
   Name                   Felicia Brooks
   Job or Title           Chief Legal Counsel for Department of Human
                          Resources;
   Address                Legal Office
                          P.O. Box 30400
                          Montgomery, Alabama 36130
   County                 Montgomery
   Telephone Number       (334)242-9330
   Email Address          felicia.brooks@dhr.alabama.gov
                          _____Individual Capacity        _X__Official Capacity

4. Defendant No. 4
   Name                   Regina D. Jernigan aka Regina Jenkins
   Job or Title           Office Manager Top Notch Cleaning
   Address (home)         7 Kinnet Drive Lot 4
                          Phenix City, AL 36870
   County                 Russell

   Address (home)         5539 Orchard Ave
                          Columbus, GA 31904
   County                 Muscogee

   Address (work)         Top Notch Cleaning
                          2219 Center Hill Dr
                          Opelika, AL 36801-6873
   County                 Lee
   Telephone Number       (865)995-8300
   Email Address          jerniganregina@yahoo.com
                          __X__Individual Capacity     _____Official Capacity

3

5. Defendant No. 5
   Name                Eric B Funderburk
   Job or Title        Attorney / Former 26th Family Court Judge Alabama
   Address             1313 Broad Street
                       Phenix City, AL 36867
   County              Russell
   Telephone Number    (334)297-2900
   Email Address       *unknown*
                       _X__Individual Capacity          __X__Official Capacity

6. Defendant No. 6
   Name                Jo Anna C Parker
   Job or Title        Attorney / Appointed Guardian Ad Litem to SLF and
                       paid from FAIR TRIAL FUND
   Address             1507 Broad Street
                       Phenix City, AL 36867
   County              Russell
   Telephone Number    (334)289-7062
   Email Address       jo@joannacparker.com
                       _X__Individual Capacity          __X__Official Capacity

7. Defendant No. 7
   Name                April Logan-Russell aka April Lancaster Logan
   Job or Title        Attorney / Appointed and paid by State of Alabama
                       from FAIR TRIAL FUND
   Address             1503 Broad Street
                       Phenix City, AL 36867
   County              Russell
   Telephone Number    (334)298-1115
   Email Address       aprillancasterlogan@gmail.com
                       __X__Individual Capacity          __X__Official Capacity

8. Defendant No. 8
   Name                L Joel Collins
   Job or Title        Attorney / Appointed and paid by State of Alabama
                       from FAIR TRIAL FUND
   Address             1323 Broad Street
                       Phenix City, AL 36867
   County              Russell
   Telephone Number    (334)297-2926
   Email Address       gadog6973@aol.com
                       __X_Individual Capacity          __X__Official Capacity

4

9. Defendant No. 9
   Name                Judge Zachary Collins
   Job or Title        Judge - Family Court 26th Judicial District Alabama
   Address             Russell County Judicial Center
                       501 14th Street.
                       Phenix City, AL 36867
   County              Russell
   Telephone Number    (334)298-0516
   Email Address       zack.collins@alacourt.gov
                       __X__Individual Capacity        __X__Official Capacity

10. Defendant No. 10
    Name               Judge Michael Bellamy
    Job or Title       Judge - Circuit Court 26th Judicial District AL
    Address            Russell County Judicial Center
                       501 14th Street.
                       Phenix City, AL 36867
    County             Russell
    Telephone Number   (334)298-0516
    Email Address      *unknown*
                       __X__Individual Capacity        __X__Official Capacity

11. Defendant No. 11
    Name               Jody Sellers
    Job or Title       Clerk of Courts Russell County Alabama
    Address            Russell County Courthouse
                       501 14th Street
                       Phenix City, AL 36867
    County             Russell County
    Telephone Number   (334)298-0516
    Email Address      *unknown*
                       __X__Individual Capacity        __X__Official Capacity

12. Defendant No. 12
    Name               Joni Cauthen
    Job or Title       Employee Clerk's office Russell County
    Address            Russell County Courthouse
                       501 14th Street
                       Phenix City, AL 36867
    County             Russell County
    Telephone Number   (334)298-0516
    Email Address      *unknown*
                       __X__Individual Capacity        __X__Official Capacity

13. Defendant No. 13
    Name                 Vickie H Wallace
    Job or Title        Former employee Clerk's office Russell County
    Address            1177 Lee Road 319
                          Smiths Station, AL 36877
    County              Lee County
    Telephone Number  *unknown*
    Email Address     *unknown*
    _X__Individual Capacity       __X_Official Capacity

14. Defendant No. 14
    Name                 Rick Chancey
    Job or Title        District Attorney 26th Judicial Circuit Alabama
    Address            Russell County Courthouse
                          501 14th Street
                          Phenix City, AL 36867
    County              Russell County
    Telephone Number  (334)298-6028
    Email Address     rickchancey@russellcoda.com
    _X__Individual Capacity       __X_Official Capacity

15. Defendant No. 15
    Name                 Laurel W Farrar
    Job or Title        Unlicensed Bar Member / Appointed and paid by State
                          of Alabama from FAIR TRIAL FUND
    Address            Alabama Bar Association says she refuses to give it
                          But they have it
    County
    Telephone Number  *unknown*
    Email Address     *unknown*
    _X__Individual Capacity       __X__Official Capacity

16. Defendant No. 16
    Name                 Deamber Hoyle
    Job or Title        Department of Human Resources
    Address            DHR
                          1901 Opelika Road
                          Phenix City, AL 36867
    County              Russell
    Telephone Number  (334)214-5780 (general office)
    Email Address     *unknown*
    _X__Individual Capacity       __X__Official Capacity

17. Defendant No. 17
    Name                Judge Laura Tocci
    Job or Title      Court of Common Pleas of Beaver County Judge
    Address          Beaver County Courthouse
                      810 Third Street
                      Beaver, PA 15009
    County           Beaver
    Telephone Number  (724)770-4682 (Secretary)
    Email Address     *unknown*
                      _____Individual Capacity    __X__Official Capacity

18. Defendant No. 18
    Name                DRO Attorney for Regina Jernigan
    Job or Title      Attorney / Appointed to represent Regina Jernigan in
                      Pennsylvania (Responding State actions)
    Address          Beaver County Courthouse
                      810 Third Street
                      Beaver, PA 15009
    County           Beaver
    Telephone Number  *unknown*
    Email Address     *unknown*
                      _____Individual Capacity    __X___Official Capacity

19. Defendant No. 19
    Name                Gerald Benyo Jr.
    Job or Title      Attorney
    Address          330 Dravo Ave
                      Beaver, PA 15009
    County           Beaver
    Telephone Number  (724)276-5455
    Email Address     *benyolawoffice@gmail.com*
                      __X__Individual Capacity    _____Official Capacity

20. Defendant No. 20
    Name                Nicholas A. Frisk III
    Job or Title      Attorney
    Address          600 Mt Vernon Dr #2
                      Ellwood City, PA 16117
    County           Lawrence
    Telephone Number  (724)714-1805
    Email Address     naf3law@gmail.com
                      __X___Individual Capacity  _____Official Capacity

21. Defendant No. 21

| | |
|---|---|
| Name | Joseph Chesnut |
| Job or Title | Director Beaver County Pennsylvania Domestic Relations Office |
| Address | Beaver County Courthouse<br>810 Third Street<br>Beaver, PA 15009 |
| County | Beaver |
| Telephone Number | (724)773-8500 |
| Email Address | joechesnut@pacses.com<br>__X__Individual Capacity        __X___Official Capacity |

22. Defendant No. 22

| | |
|---|---|
| Name | Frank Platz |
| Job or Title | Enforcement Supervisor Beaver County DRO |
| Address | Beaver County Courthouse<br>810 Third Street<br>Beaver, PA 15009 |
| County | Beaver |
| Telephone Number | (724)773-8500 |
| Email Address | frankplatz@pacses.com<br>__X__Individual Capacity        __X__Official Capacity |

## BASIS FOR JURISDICTION

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."

**A.      Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?**

1.   Violation of Article 4 Section 1 Full Faith and Credit

   a.   The Alabama Uniform Parentage Act of 2006 (AUPA 2006) Section 26-17-6 (Who may bring an action) and Section 26-17-5 (Presumption of paternity) states that an alleged father could not bring an action to establish a parent child relationship when there is a presumed father. There was a lack of subject matter jurisdiction, voiding any order of paternity, custody or visitation. In addition any action, by AUPA 2006, would be void that did not join the presumed father to the action, Section 26-17-11.

   b.   The AUPA 2006 Section 26-17-14 said that an adjudication SHALL come with an order to get the parents name on the birth certificate and SHALL come with immediate determinations for child support, medical insurance, and costs and fees. The adjudication SHALL include a statement of fact of jurisdiction. The absence of ALL these orders in the record dictates one interpretation, that the petition for parentage was denied.

    c.  The AUPA 2006 Section 26-17-12(a) says that when paternity is established that the father is ordered to pay for the genetic tests.  The court only pays in the event that paternity is not established.

    d.  The AUPA of 2006 Section 26-17-13(3) states that a genetic test result which indicates 97 percent or greater probability  is required to create a presumption of paternity.  There are no genetic tests in the record or recorded percentage.

    e.  Pennsylvania Common Pleas Court had a duty to give full faith and credit to the laws of Alabama at the time the initial petition was filed (AUPA 2006).

2.  Violation of the 4th Amendment

    a.  Alabama Department of Human Resources (ADHR) initiated an interstate child support action based on documentation provided by Regina Jernigan. The petition as signed and transmitted through the interstate case referral system claimed evidence that was not submitted or in existence, resulting in the order demanding intrusion in the financials of the plaintiffs.

    b.  Beaver County, Pennsylvania Domestic Relations Office (BCDRO) received the insufficient evidence and issued the order demanding the financials of the plaintiffs.

    c.  ADHR and BCDRO acting on behalf of the Pennsylvania court as well as the Clerk of Courts in 26th Judicial District of Alabama were made aware of the facts of the case as claimed by the plaintiffs and continued with the BCDRO Conference on June 1, 2022 demanding and disclosing the financial information of the plaintiffs.

   d. The plaintiffs made a timely request for a De Novo hearing and attempted to present evidence that paternity was denied February 8, 2007, and that the petition submitted was a fraud. Instead of allowing plaintiffs to present the evidence and settle the matter of the denied paternity, the case marched forward demanding financials and support calculations with no proof of duty to support.

   e. The current order in Pennsylvania leaves plaintiffs open for routine inspection of their personal financial information without proof of plaintiff Dean Friend's paternity.

3. Violation of the 6th Amendment

   a. The plaintiffs demanded the right to question Regina Jernigan in the De Novo hearing. She was not required to submit an affidavit, a deposition, or appear by telephone or video. All that she provided to substantiate her request was the initial Uniform Support Petition with multiple discrepancies, falsehoods and frauds on its face. She also included an illegible copy of the Final Order from June 18, 2007 and the alleged adjudication that until the middle of June 2022 could not be located by the Russell County Alabama Clerk's office employees.

   b. The plaintiffs demanded that ADHR produce the DNA test results. They did not and claimed that Plaintiff Dean Friend never took them.

   c. The Clerk of Courts held back documents in 2022 that would have proven that ADHR had the test results as of November 27, 2006. The DNA tests are no longer in any record.

    d.  The plaintiffs demanded a list of labs from Russell County ADHR that were used for DNA testing and were told that list does not exist.

    e.  The plaintiffs demanded their right to have the proceedings as publicly as a juvenile proceeding will allow, in the courtroom, on the record, no more backdoor meetings. They were ignored and status conferences prevailed over the hearings that would allow them transparency.

    f.  Plaintiff Dean Friend could not appeal orders, and addition of records in 2013-2014 that he was never notified were occurring.

4.  Violation of 9th Amendment

    a.  Sex Discrimination is protected in employment by the Civil Rights Act of 1964, Federally Funded Education Programs By Title IX, voting by the 19th Amendment, and Housing by the Civil Rights Act of 1968.

    b.  Just because a Civil Rights Act has not told our Family Courts and Departments of State that Sex Discrimination is a civil rights violation the 9th amendment says that this need not be enumerated, if the right is awarded in housing, education, voting and employment why would it be denied in court systems and state departments, such as Department of Human Resources?

    c.  The court will see this case from the beginning to the end, because plaintiff Dean Friend is male, has been treated as "She said and he can shut-up".

    d.  The bias that men do not want contact with children, want to pay for children, or have a desire to be responsible for their offspring is apparent in every interaction with defendants. It is an uphill battle in the conversations to convince them that the initial petition was filed by the alleged father, that he

was aware that would come with an 18 year child support obligation, but when he is told he cannot be the father, he cannot have his DNA tests, he cannot have any rights, no custody, no visitation, no records access, and 17 years elapses and now the wallet is adjudicated to fatherhood he is met with "What are you complaining about?" Every single interaction with an official in Alabama and most of Pennsylvania has treated him like he got away with something by not having to pay all those years. Instead not one person imagines if she was his child what he lost, simply by matter of being a "HE".

 e. The gender bias that a man must be lying to try to get out of paying child support has defendants completely ignoring all evidence that supports the petition for paternity was denied, to the point they will not even hear it or see it because it has to be a lie.

5. Violation of the 14th Amendment

 a. The plaintiffs demanded the entire record from the Russell County Alabama Clerk's office in June of 2022 and did not receive most of the evidence that should have made a great deal of difference in the September 2022 De Novo hearing in Pennsylvania. Those records were not received until April of 2023.

 b. The paternity petition February 8, 2007 was denied. On June 18, 2007 a confusing Final Order was entered. Judge Eric Funderburk did not have subject matter jurisdiction to make the order and was aware of this on February 8, 2007 when Regina Jernigan announced she wasn't technically divorced from Shaun Jernigan Sr. (married 1998). It was the basis for the denial of the paternity petition. When Judge Eric Funderburk was questioned

13

why he made the final order, visitation at mothers discretion, he said "in hopes she would do the right thing." This did not itself take the plaintiffs property, but was the start of due process violations of which the ultimate result was a deprivation of property.

c.  Plaintiff Dean Friend was repeatedly told there was nothing to appeal, his petition was denied.  Multiple times in the Case Action Detail of the JU 2006-000247.01 record there is the addition of what appears to be Judges' orders added with no corresponding docket or service entries.  Each of these post case closure entries and modifications to the record have created a completely unreliable record that the only option left should have been a reliance on the law for facts to support the outcome.  None of the modifications to the record follow due process and the resulting record is responsible for the deprivation of property.

d.  Plaintiffs had no course of pre-invasion, pre-deprivation action.  The ADHR submitted the application with claims of evidence not submitted.  The BCDRO sought and obtained a Pennsylvania Judges order demanding a financial intrusion.  Despite protest and evidence, under threat of arrest and greater financial loss, plaintiffs were coerced into compliance.  Interim orders for payments and garnishments were entered before any hearing for paternity was held.

e.  Arrearages accrued and negative collection actions were taken until a stay was finally put in place in August 2022 in anticipation of the De Novo hearing.

After which negative collection actions continued despite the stay on collections.

f.  At the De Novo hearing on September 22, 2022 the judge continued the hearing to a status conference.  The plaintiffs demanded the withdrawal of their attorney, which was granted and it was communicated that they were ordered to hire another attorney to not delay the status conference.  Prior to the status conference and plaintiffs ability to demand that the hearing resume to present evidence and question witnesses, a final order was issued to deprive plaintiffs of property.

g.  This deprivation of property also continues to the true inheritors of plaintiff Dean Friend's property by the nature of the Child Support order it affirms a paternity finding that never happened.

6.  Violations of the Uniform Interstate Family Support Act (UIFSA)

a.  Since the issuance of the Final Order in Pennsylvania, Russell County ADHR has been running their own calculations of the child support obligation and sending payment notices, with interest and penalty calculations.

b.  The initiating state of Alabama uses an exclusively Judicial system to establish and enforce Child Support orders.  Alabama has no such thing as a paternity only establishment action.  The ADHR exercised an authority that they do not have over the citizens of their own state.  The initiation of a child support order is always done by a judge in the state of Alabama at the time paternity is affirmed.  The ADHR officers' requests were treated by the responding state of Pennsylvania, which allows paternity only hearings and a

custodial parent to later seek an administrative process for support, like they had originated in Pennsylvania. The ADHR officers' do not have the authority in Alabama to initiate child support because the judge would have already done it, yet their "closet copies of unauthenticated" illegal documents were accepted by BCDRO who does have authority to initiate a child support action when paternity was established prior.

c. The UIFSA says that the application of law is that of the responding tribunal. When plaintiff Dean Friend entered into the court record at the De Novo hearing, the marriage between Shaun and Regina Jernigan of 1998-2017 into the record and informed Pennsylvania court of the AUPA 2006 26-17-6 (Who can petition for parentage) law that said he could not bring the petition in the first place and that is why he was denied, that was a legal and collateral attack on Judge Eric Funderburk's subject matter jurisdiction. Even if Judge Laura Tocci had even been entertaining the idea that the adjudication had happened, Pennsylvania law would not have allowed her to accept an order issued as valid that she had proof in her hands that the issuing judge had no jurisdiction to issue. She certainly should not have issued an order of child support reaffirming the void judgment.

d. Defendant Regina Jernigan was identified by herself and ADHR as "Obligee". As defined by UIFSA that is any of the following:

   i. An individual to whom a duty of support is owed (*no order from Judge Eric Funderburk at parentage action in 2006*)

  ii. An individual to whom a duty of support is alleged (*this was decided at the initial parentage action when she was told there was no duty to support*)

  iii. A state or political subdivision (*Regina Jernigan does not qualify*)

  iv. An individual seeking a judgment determining parentage of the individual's child. (*She was not seeking judgment in fact she denied Plaintiff's parentage petition on November 2, 2006 and by law until her husband enters a rebuttal of paternity no one, not even her can seek judgment on paternity.*)

e. Plaintiff Dean Friend was identified by Regina Jernigan and Alabama DHR as "Obligor".  Without a valid obligee this hardly needs evaluation because all instances assume that the obligor is liable to the obligee.  However, as defined by UIFSA that is any of the following:

  i. Who owes or is alleged to owe a duty of support (*no valid order could be located in the court record stating that he owed a duty to support*)

  ii. Who is alleged but has not been adjudicated to be a parent of a child (*Regina Jernigan had already denied him, on the birth certificate, in court, on welfare applications and for the duration of the child's life and for any privileges associated with parenthood.  Any adjudication since she was married would be void.*)

  iii. Who is liable under a support order (*this is well established at this point, there was no existing support order for the previous 17 years*)

f. UIFSA allows for the establishment of a temporary (interim order) if:

   i.   The respondent signed a verified statement acknowledging paternity
        (*No*)

   ii.  The respondent has been determined by or pursuant to LAW to be the
        parent (*No*)

   iii. There is other clear and convincing evidence that the respondent is the
        child's parent (*No, only the "She said and he can shut-up" rule*)

7. Violations of the Fair Credit Reporting Act

   a. Currently all 3 major credit bureaus have a 0 days late derogatory status Child
      support account being reported by Beaver County Domestic Relations

8. Violation of Alabama State Laws

   a. Offering a false instrument for recording; nullification or expungement from
      record (AL Code 13A-9-12 2022) - Alabama citizens are entitled to protection
      from violations of all of these laws.  Pennsylvania citizens violated in
      Alabama by Alabama citizens enjoy no such protection.

   b. Forgery in the second degree (AL Code 13A-9-3(2)(3) 2022)

   c. Criminal possession of forged instrument in the second degree (AL Code
      13A-9-6 2022)

   d. Criminal Conspiracy (AL Code 13A-4-3 2022)

   e. Conspiracy formed in this state to commit crime elsewhere indictable here
      (AL Code 13A-4-4 2022)

   f. Aggravated theft by deception (AL Code 13A-8-2.1 2022) Regina Jernigan
      has/is asking for retroactive to 2006 which the named defendants continue to
      threaten any resistance by plaintiffs could result in her success of changing the

current theft calculation from tens of thousands of dollars to hundreds of thousands of dollars.

g.  Chapter 17 - Circuit and District Court Personnel. Article 4 - Circuit Clerks and Registers. Division 2 - Clerks. Section 12-17-94 Duties Generally (a) (2) (3) (4) (b)

h.  Chapter 17 Article 6 - District Attorneys Division 1 - General Provisions Section 12-17-184 Powers and Duties Generally (2) (4)

i.  Chapter 20 Judicial and Other Public Records Article 2 - Judicial Records Section 12-20-29 Substitution of Lost, etc papers or records in civil cases - How made - After determination of action or proceeding

j.  Title 12 - Courts Chapter 20 - Judicial and Other Public Records Article 3 Other Public Records Section 12-20-50 Establishment or Restoration of Lost etc, Records of State, County or Municipality.  Russell County Circuit Court Judge has all power and authority to modify that mutilated record to an accurate record ex parte leaving only the requirement of voiding the invalid final order.

9.  Violation of Pennsylvania State Laws

a.  By state law at 6 months prior to age 18 an emancipation questionnaire was to be sent by Pennsylvania Domestic Relations Section to the obligee, copying the obligor.  If the obligee fails to respond within 30 days the court has the authority to terminate the order.  Plaintiff Dean Friend, alleged obligor, received no copy and no such questionnaire was sent.

b. Pennsylvania Title 18 Chapter 53 Abuse of Office 5301 Official Oppression, any challenge will lead to:

    i. Arrest in Pennsylvania

    ii. Bigger Penalty from Alabama in the form of retroactive support

    iii. Threats of violence and force

    iv. Attacks to credit, property, basic food rights (90% or more of our meat comes from hunting), passports, and right to work

c. As soon as the September 22, 2022 ended in continuance, PACSES updated to say "Final Order" but the hearing was continued to status conference. This was more of the manipulation of the courts to ensure meeting Federal timelines. The Title IV-D funding gives money by points award. 90% child support ordered or better gets the most points. So if one guy in the hall was ordered not to pay support then 18 others, guilty or not, have to pay to keep funding up. As disgusting as this sounds what other excuse is there for:

    i. Judge had no subject matter jurisdiction to order adjudication

    ii. Closet copies of papers do not match any Alabama Law

    iii. Completely mutilated court record with backdated time stamps

    iv. No testimony offered by petitioner

    v. Completely non-responsive DHR in Alabama

    vi. Child is going by another man's last name even listed as grandchild in that man's father's obituary (estoppel - both initiating and responding state have well documented case law to support and respondent had evidence as such to present at hearing)

vii.    AND COMPLETELY TRUTHFUL VIABLE AND BELIEVABLE

TESTIMONY FROM RESPONDENT, squashed and ignored

d.  Plaintiffs called DRO in Pennsylvania immediately about the "Final Order"

listing and were assured that was not true.  They advised that they had fired

their attorney and requested to speak with the attorney for DRO representing

Regina Jernigan and were denied.

e.  Pennsylvania continued to make the deal and issue the order without officially

finishing the trial and allowing plaintiffs to enter all evidence.

**B.**    **Section 1983 allows defendants to be found liable only when they have acted "under**
**color of any statute, ordinance, regulation, custom, or usage, of any State or Territory**
**or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983,**
**explain how each defendant acted under color of state or local law. If you are suing**
**under Bivens, explain how each defendant acted under color of federal law. Attach**
**additional pages if needed.**

10. Defendant KAY IVEY is the Governor of the State of Alabama and is the

Chairperson of the Department of Human Resources(DHR).  In her position as

Governor and Chairperson of DHR she appoints, authorizes, condones and knowingly

allows the policies and practices that directly caused and will continue to cause the

injuries and violations of civil rights as claimed by plaintiffs.  Defendant Kay Ivey is

sued in her official capacity only.

11. Defendant NANCY T. BUCKNER is the Commissioner of the Alabama Department of Human Resources. In her position she appoints, authorizes, condones and knowingly allows the policies and practices that directly caused and will continue to cause the injuries and violations of civil rights as claimed by plaintiffs. Defendant Nancy T. Buckner is sued in her official capacity only.

12. Defendant FELICIA BROOKS is Chief Legal Counsel to the Alabama Department of Human Resources. In her position she authorizes, condones, and knowingly allows the policies and practices that directly caused and will continue to cause the injuries and violations of civil rights as claimed by plaintiffs. Defendant Brooks is sued in her official capacity only.

13. Defendant REGINA D. JERNIGAN a.k.a. REGINA D. JENKINS is mother to minor child S.L.F. and Office Manager at Top Notch Cleaning in Opelika, Alabama. She is the catalyst for the unlawful actions taken against plaintiff DEAN FRIEND. She used, is using and will continue to use the State of Alabama, the State of Georgia, the Commonwealth of Pennsylvania, the State of South Carolina, The Federal Social Security Title IV-D act and the court systems of Russell County Alabama and Beaver County Pennsylvania to deprive of property, and rob of happiness the plaintiffs. Defendant Regina Jernigan is being sued in her individual capacity only.

14. Defendant ERIC B FUNDERBURK is currently a practicing attorney in the state of
Alabama and was a Family Court Judge for the 26th Judicial Circuit of Russell
County January 1999 - January 2011. He knowingly acted in the complete absence of
all subject matter jurisdiction issuing orders in 2006 - 2007. Those orders are directly
responsible for significant harm to plaintiffs beginning in 2022. He is the husband of
Defendant Jo Anna C Parker. Defendant Funderburk is being sued in his official
capacity and in his individual capacity.

15. Defendant JO ANNA C PARKER is currently a practicing attorney in the state of
Alabama and was appointed by Defendant and then Judge Eric B Funderburk to
Guardian Ad Litem for minor child S.L.F. on September 21, 2006, paid for by the
Alabama Fair Trial Fund. She knowingly and as a paid agent of the state participated
in the issuance of the orders lacking subject matter jurisdiction that provided her the
mechanism to alter the record from November 2013 to January 2014. She is the wife
of Defendant Eric B Funderburk. Defendant Parker is being sued in her official
capacity and in her individual capacity.

16. Defendant APRIL LOGAN-RUSSELL a.k.a APRIL LANCASTER LOGAN is
currently a practicing attorney in the state of Alabama and was appointed by
Defendant and then Judge Eric B Funderburk to represent plaintiff DEAN FRIEND
on November 2, 2006, paid for by the Alabama Fair Trial Fund. She knowingly
participated with Defendant Jo Anna C Parker in creating a false impression and
altering the record without judges orders. She withheld her available billing

statements that prove during the time she was appointed no adjudication happened. Defendant April Logan-Russell is being sued in her official capacity and in her individual capacity.

17. Defendant L JOEL COLLINS is currently a practicing attorney in the state of Alabama and was appointed by Defendant and then Judge Eric B Funderburk to represent plaintiff DEAN FRIEND on January 18, 2007, paid for by the Alabama Fair Trial Fund.  Appointed by Judge Eric B Funderburk to aid in the denial of due process and the administration of illegal orders, L Joel Collins present at the final hearing, knowingly denied plaintiff Dean Friend of his civil rights and participated in the actions that caused, are causing, and will continue to cause the plaintiffs harm. Defendant L Joel Collins is being sued in his official capacity and in his individual capacity.

18. Defendant JUDGE ZACK COLLINS is current Family Court Judge in the 26th Judicial Circuit Court of Alabama.  Judge Zack Collins has directly caused, continues to cause and will continue to cause harm by issuing an order affirming the authenticity of an illegal document added to a sealed and closed case by an attorney and an employee of the Clerk's office.  The original order was made in the complete absence of subject matter jurisdiction therefore Judge Zack Collins perpetuated the due process violations that have also resulted in the seizure of property without proof of debt.  Defendant Zack Collins is being sued in his official capacity only.

19. Defendant MICHAEL BELLAMY was a District Court Judge, appointed November 19, 2013 to Circuit Court Judge of the 26th Judicial Circuit Court of Alabama. On this same day, not acting as a Family Court Judge, not listed on his docket, and not served to all parties, Judge Bellamy appears to have signed an order unsealing the denied paternity case at Defendant Regina Jernigan's request. That order was subsequent to the order issued by Defendant Eric Funderburk lacking subject matter jurisdiction, therefore Judge Bellamy had no subject matter jurisdiction. The lack of attention paid in signing an order to unseal a sealed paternity action directly contributed to the illegally added documents that were used by Defendant Regina Jernigan to create a false impression. Defendant Michael Bellamy is being sued in his official capacity only.

20. Defendant JODY SELLERS is the Clerk of Courts in the 26th Judicial Circuit Court of Alabama. In her position as County Clerk she is responsible for the persons, their actions and the records in her care. Her office condones and knowingly allows policies and practices that directly caused and will continue to cause the civil rights violations as claimed by the plaintiffs. She is the sister and supervisor of Defendant Joni Cauthen. Defendant Jody Sellers is being sued in her official capacity and in her individual capacity.

21. Defendant JONI CAUTHEN is an employee of the Clerk of Courts in the 26th Judicial Circuit Court of Alabama. In her position over Juvenile cases she exercises the power of gatekeeper to the records. Every call, every letter, every request for

access to Juvenile case information is filtered directly through Defendant Cauthen. She conspired to withhold information relevant to investigating the facts and presenting plaintiff DEAN FRIEND's case, she made false statements to Defendant Judge Laura Tocci, she acted with bias, and malice to cause deprivation of property without due process.   She is the sister and subordinate of Defendant Jody Sellers. Defendant Joni Cauthen is being sued in her official capacity and in her individual capacity.

22. Defendant VICKIE H WALLACE was an employee of the Clerk of Courts in the 26th Judicial Circuit Court of Alabama. She is directly responsible for facilitating the January 2014 extrinsic fraud, depriving plaintiff DEAN FRIEND from questioning any of the modifications or back dating that was done to the record.  In the absence of a Judge's order she took it upon herself to modify a case disposed on February 8, 2007 with a disposition of Petition Denied.  She is directly responsible for the deprivation of property and invasion of privacy,  and acted directly in violation of plaintiff Dean Friend's civil rights.  Defendant Vickie H Wallace is being sued in her official capacity and her individual capacity.

23. Defendant RICK CHANCEY is the District Attorney in the 26th Judicial Circuit Court of Alabama.  He has full prosecutorial discretion over the individuals that have committed criminal acts in Russell County, Alabama.  He also has full access to the record and could see details that had been kept secret for nearly a year that would have made the fraud, modifications, and responsible parties evident.  His refusal to

see the crimes because the offenders are his co workers has left plaintiffs without remedy in Russell County to the violations of their civil rights. Defendant Rick Chancey is being sued in his official capacity and in his individual capacity.

24. Defendant LAUREL W FARRAR was an Attorney in the State of Alabama and was appointed by Defendant and then Judge Eric B Funderburk to represent Defendant Regina D Jernigan on November 2, 2006, paid for by the Alabama Fair Trial Fund. She knowingly participated in the issuance of an order that she knew to be absent of subject matter jurisdiction. She filed inaccurate statements in some lines of her billing statement allowing for more confusion as to the outcome of the case. She contributed to the circumstances, ignoring her professional and legal obligations, that are directly causing plaintiffs losses and harm. Defendant Laurel Farrar is being sued in her official capacity and in her individual capacity.

25. Defendant DEAMBER HOYLE is an employee of the Department of Human Resources for the state of Alabama. She was the non-responsive individual provided by Beaver County Domestic Relations as the person that took the fraudulent application, submitted a request to invade plaintiffs privacy with insufficient evidence, and provided perjurious claims on the Title IV-D form to initiate the case to deprive plaintiffs of property without due process. Defendant Deamber Hoyle is being sued in her official capacity and her individual capacity.

26. Defendant JUDGE LAURA TOCCI is a judge for the Beaver County Court of
    Common Pleas in Pennsylvania. When plaintiff Dean Friend received notice of the
    Title IV-D request for Beaver County Pennsylvania to initiate child support he
    immediately raised the issue that Defendant Regina Jernigan was married and that he
    cannot be the father because Defendant Regina Jernigan's husband from 1998 to 2017
    Shaun Jernigan Sr. was the legal father. Judge Laura Tocci had no subject matter
    jurisdiction for a child support action against plaintiff Dean Friend for a child whose
    paternity had been established to another man by matter of law. She violated
    plaintiffs rights to unlawful search and seizure, right to face accuser, and right to due
    process. Defendant Judge Laura Tocci is being sued in her official capacity and in
    her individual capacity.

27. Defendant JOHN DOE is the attorney appointed by the Beaver County Pennsylvania
    Domestic Relations Office to represent Defendant Regina Jernigan. Defendant Doe
    was an informed party to the withdrawal of Attorney Attorney Gerald Benyo Jr. He
    was aware that Plaintiff Dean Friend had retained a new attorney and proceeded to
    violate Plaintiff's right to due process by participating in a final order of no subject
    matter jurisdiction with an attorney no longer representing the plaintiff. Defendant
    John Doe is being sued in his official capacity.

28. Defendant GERALD BENYO JR is an attorney that was hired by plaintiff Dean
    Friend to assist in attacking the paternity claim in Pennsylvania. He aided the court in
    violating plaintiff Dean Friend's 4th, 6th, and 14th amendment rights. He acted in a

manner inconsistent with his professional and legal obligations that directly facilitated the harm caused to the plaintiffs. Defendant Gerald Benyo Jr. is being sued in his individual capacity.

29. Defendant NICHOLAS FRISK III is an attorney that was hired by plaintiff Dean Friend to replace Defendant Gerald Benyo Jr. after plaintiffs became aware of his completely unethical, and incompetent representation. He aided the court in violating plaintiff Dean Friend's 4th, 6th, and 14th amendment rights. He acted in a manner inconsistent with his professional and legal obligations that directly facilitated the harm caused to the plaintiffs. Defendant Nicholas Frisk III is being sued in his individual capacity.

30. Defendant JOSEPH CHESNUT is the Director of Domestic Relations Beaver County. In his position he appoints, authorizes, condones and knowingly allows the policies and practices that directly caused and will continue to cause the injuries and violations of civil rights as claimed by plaintiffs. Defendant Joseph Chesnut is being sued in his official capacity and individually.

31. Defendant FRANK PLATZ is the Enforcement Officer of Domestic Relations Beaver County Pennsylvania. In his position he knowingly participates in the practices that directly caused and will continue to cause the injuries and violations of civil rights as claimed by plaintiffs. Defendant Frank Platz is being sued in his official capacity and in his individual capacity.

## STATEMENT OF CLAIM

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

**A.    Where did the events giving rise to your claim(s) occur?  What date and approximate time did the events giving rise to your claim(s) occur?**

32. The marriage of Regina Jernigan to Shaun Jernigan Sr. took place in Muscogee County, Georgia 1998.

33. The minor child in question, SLF was born in Sumter, South Carolina in Sumter County, September 2005.

34. The initial paternity/visitation petition was filed in Phenix City, Alabama in Russell County, August 18, 2006.

35. The paternity/visitation action was disposed of with code 28D Petition Denied on February 8, 2007 in Phenix City, Alabama in Russell County.

36. The illegal final order was issued in Phenix City, Alabama in Russell County, June 18, 2007.

37. The illegal modification of the initial paternity/visitation action occurred in Phenix City, Alabama in Russell County between November 2013 and January 2014.

38. The divorce of Regina Jernigan and Shaun Jernigan Sr. took place in Muscogee County, Georgia 2017.

39. The initiating state for the Title IV-D Uniform Support Action came from Phenix City, Alabama in the county of Russell, March 22, 2022.

40. The responding state for the Title IV-D Uniform Support Action is Pennsylvania in the county of Beaver.

41. The order to produce financial information for Plaintiff Dean Friend and Plaintiff Sandra Friend, wages, taxes, investments, properties, insurances, accounts came from the Commonwealth of Pennsylvania Beaver County April 29, 2022.

42. The interim order for support was issued June 1, 2022 by the Commonwealth of Pennsylvania Beaver County.

43. The report to the IRS to garnish Federal Tax refunds for arrearages was reported by both the Commonwealth of Pennsylvania Beaver County Domestic Relations Office and Russell County Alabama Department of Human Resources.

44. Credit Bureau reporting for a derogatory account and State refund garnishment originated from the Commonwealth of Pennsylvania Beaver County Domestic Relations Office.

45. The Final Order for Support, wage garnishment, unemployment garnishment,  was issued from the Commonwealth of Pennsylvania Beaver County on October 24, 2022.

46. The garnishments of plaintiff's earning are currently occurring in Pennsylvania with disbursement to Defendant Regina Jernigan in Alabama

**B.**     **What are the facts underlying your claim(s)? (*For example: What happened to you? Who did what? Was anyone else involved?  Who else saw what happened?*)**

31

47. May 2022 Dean Friend, plaintiff, was served with a complaint from Regina Jernigan for Child Support for minor child SLF, born September 2005. The complaint was filed by Regina Jernigan in the Russell County ADHR Office 1901 Opelika Rd, Phenix City, AL 36867. The only information served to him was that this was through the Social Security Title IV -D system. It was a Uniform Support Petition claiming "Never Assistance".

   a. Section 1 requests Establishment of an order for current child support, including medical support and retroactive child support since 2006.

   b. Section 2 says the parents have a duty to support the child named in this petition and that respondent has not provided support since 2006.

   c. Section 3 says the respondent is not in military service.

   d. Section 4 says documents attached are "petitioner's general testimony", "acknowledgment of parentage" and "birth certificate/record of child".

   e. Section 5 has under penalty of perjury on 3/4/2022 the signature of Regina Jernigan.

In addition the only papers initially provided by the responding state, Pennsylvania, were an order to appear, an income statement worksheet, expense worksheet, and a social security number disclosure statement. Upon request Dean Friend received the 2 documents BCDRO claims were included with the petition which was the Final Order from the 2006-07 petition that he filed for parentage and visitation which was denied and an alleged adjudication at the bottom of a continuance part way through the 2006-07 trial. The birth certificate was never provided as it does not have his

name on it.  There was never an Acknowledgement of Paternity signed so he does not

know why that was checked on the Uniform Support Petition form as proof.  He was

never given access to any testimony or statements that she made even after repeated

requests to ADHR, BCDRO, attorney Gerald Benyo Jr for Dean Friend, attorney

Nicholas Frisk III for Dean Friend, or the BCDRO attorney for Regina Jernigan.

Regina Jernigan a.k.a Regina Jenkins knew that she could not file this petition and

that legally Dean Friend is not the father of SLF.

48. In September of 2004 Dean Friend was living and working in Columbus, Georgia and

met and briefly dated Defendant Regina Jernigan of Columbus, Georgia.  The

relationship terminated prior to Halloween 2004.  Dean Friend made plans to move to

Sumter, South Carolina for a job opportunity and left Georgia December 25, 2004.

Attempting to give away some furniture he reached out to several acquaintances the

evening of December 24, 2004.  He reached Regina Jernigan and she said her

"ex-Mother-in-law" Diane would like them.  They invited him to stay at their house

for the night and have dinner and hang out.  Regina Jernigan lived in the house with:

    a.  Her husband Shaun Jernigan (m. 1998-2017),

    b.  Shaun and Regina Jernigan's 5 yr old son,

    c.  Regina Jernigan's Mother-in-Law Diane Jernigan,

    d.  Brother-in-Law Richard Jernigan and Richard's wife Misty Jernigan and

    e.  Richard and Misty's children.

All were introduced to Dean Friend as "ex".  Nonetheless she did reside in the home

with them. This was the one and only instance that they were together as Dean then

departed town for South Carolina the following morning.  This became the alleged night of conception.

49. A couple weeks later Regina Jernigan called Dean Friend, announced she was pregnant and swore he was the only one it could be.  He said he had a place and a good job, and he was not moving back.  He sent her money for someone to drive her to South Carolina.  He paid for her and her son.  She was lonely and eventually one of her cousins Ashley Middleton moved in and he provided for her also.  The baby was due at the end of August.  Recently he made mention to his wife of nearly 14 years why they did the scheduled C-Section, and that it was because the Doctor said the baby was 2 weeks late.  That means conception had to be the end of November, early December and there is no possible way that he can even biologically be the father let alone the fact that he has legally not been the father for 17 years.

50. When the baby was born Regina Jernigan lied about being married to the vital records staff allowing her to leave the hospital registering the child as father unknown.  A couple weeks after SLF was born Regina Jernigan demanded that Dean Friend give up the 2 acres and the home he had nearly paid off in South Carolina and move back to Columbus, Georgia with her and the baby.  They would be able to stay with her Grandmother until they could find a place of their own.  When they arrived she made sure the house in South Carolina had been taken over and then she made him homeless, stating they could not live with her grandmother after only a few days and moved in with her Aunt Angela Middleton in Phenix City, Alabama. From Winter of 2005 until end of Summer 2006 she played keep away with SLF.

51. November 21, 2005 Regina Jernigan sent a letter to Dean Friend's Mother asking her to claim that she is paying child support on his behalf because he is unemployed. So that she can get welfare benefits. She states in the letter that she is living in Georgia but is using her Aunt's address in Alabama to commit welfare fraud. Dean Friend's mother refused, concerned, she was a federal employee that it would affect her employment and she could get in trouble. This should start to develop a pattern of complete disregard for truth and "under penalty of perjury" by Regina Jernigan.

52. August 18, 2006 Dean Friend went to a Juvenile Court intake officer, Rodney Woods, in Phenix City Alabama reporting that Regina Jernigan would not let him see the child. She was drinking, doing drugs, leaving the child with anyone but him and that **HE** wanted to file a **petition** for **parentage** and **visitation**. This is clearly reflected in the Russell County 26th District Court Case Action Summary JU-2006-000247.01 and DOCUMENTS 1&13 in the court record. At this point Dean Friend believed she was divorced. Had he known she was married and answered the question as such, he has been told by Mr. Woods and the Clerk of Courts they never would have even let him file the petition. Alabama law then and now prohibits an alleged father to initiate a paternity action when the presumed father is married to the mother.

53. September 22, 2006 Regina Jernigan responded to the complaint and a settlement hearing was set for November 2, 2006. This is a good opportunity on the case action summary to see what happens when the outcome of a hearing is pretty much just a continuance or a scheduling of a next hearing. There is no "SERV SERVICE AND RETURN NOTICE ISSUED" in the Alabama SJIS Case Detail because there were no orders to the parties after the 9/22/2006 hearing. It also is a good time to review

what is referred to as DOCUMENT 3 in the Alabama record because it also shows the "SCANNED" at the bottom of those continuance forms is also NOT a standard practice in the Clerk's office as DOCUMENT 3 does not contain that mark.

54. September 22,2006 Judge Eric B Funderburk assigned his now wife Attorney Jo Anna C Parker to be the Guardian Ad Litem for SLF.

55. November 2, 2006 a block of "TEXT" entries were made all time stamped 3 hours **before** the actual settlement hearing began in the Alabama SJIS Case Action Detail outlining the issued orders and outcome of the hearing.  On November 2, 2006 Regina Jernigan under oath told Judge Funderburk she was divorced resulting in his finding the court had jurisdiction, entering a denial of the petition on behalf of the mother, appointing attorney Laurel Farrer for Regina Jernigan, Attorney April Lancaster Logan for "the Father".  Special note is made of the use of the words Father and "parents" on November 2, 2006 prior to any findings or alleged adjudications in the Court Record DOCUMENT 4.  DNA testing was ordered to be taken at Russell County ADHR at 1:00 pm November 7, 2006.  Matter Continued until December 12, 2006 at 1:30 a.m. for final hearing.  A.M. is not a typo.

56. As expected, orders were issued to the parties, the Clerk of Courts on November 3, 2006 in the Alabama SJIS Case Action Detail has a corresponding "SERV SERVICE AND RETURN NOTICE ISSUED".

57. On November 7, 2006 Dean Friend, Regina Jernigan, and SLF all appeared for the appointment at Russell County ADHR for the DNA test.  It was at this point that Regina Jernigan confessed that there were three other possibilities, Richard Jernigan, her married brother-in-law, some other married guy named Kevin, and some really

old guy named Sonny. Dean Friend, sick to his stomach, asked her why she did all of this to him and she replied "You was the best option".

58. Important to point out the document Attorney April Logan files with the court on November 14, 2006 which should be billing and discovery appears to change his position to appear as defendant and again calls him Father. This is recorded as DOCUMENT 5 in the record.

59. The entry on November 22, 2006 12:00 am on the Alabama SJIS Case Action Detail unequivocally points out that all the "scanned doc" timestamps are manufactured entries. Meaning that the court cannot reliably count on when any document was scanned in that has a timestamp of 12:00 am in the Case Action Detail because the dates were manually manipulated and the record offers no actual timestamp for the entry of the documents. That event happened on 11/2/2006 and if the Case Action Detail reflected the correct date then the original 2006-2007 case Documents would line up 1,3,4,5,6,7,8,9 by number and timestamp as expected. The document number on the top is the best indicator along with the court timestamp of sequence of events.

60. On December 11, 2006 April Logan entered a completely reasonable request for a continuance serving to all parties which appears to have been granted on December 12,2006 by the record. It was communicated to Dean Friend that the continuance had been granted and that the Final Hearing was rescheduled for February 8, 2007. DOCUMENT 6 of the Court Record is the continuance request.

61. On December 12, 2006 despite granting the continuance and communicating as much to Dean Friend who was in Pennsylvania at the time, the Judge, Regina Jernigan and 3 attorneys appear to have attended what can only be concluded as an illegal

adjudication of parentage.  DOCUMENT 2 no longer exists in its original form and a "SCANNED" copy entered into the record at a later date is the only one the Clerk has managed to find and that took until Mid June 2022.  Also one would expect this to be DOCUMENT 7 in the record since it happened one day after DOCUMENT 6, instead DOCUMENT 7 is the withdrawal of April Logan and entry of Joel Collins on January 23, 2007.  The continuance form has the new date for the rescheduled final hearing, the list of parties present, the box for the subpoena issued to Dean Friend since he was having trouble securing permission from his employer for the December hearing, and now it has in the other line "Dean Friend adjudicated father of minor." DOCUMENT 2 itself also has replaced a page of Dean Friend's petition for parentage which was moved to DOCUMENT 13 on January 9, 2014, 7 years after the close of the case.  It is important to note that DOCUMENTS 16 and 17 were hidden from Dean Friend in 2022 until specifically demanded in 2023, his Attorney billing statements, repeatedly refer to December 12, 2006 (the new DOCUMENT 2) as a continuance and never once uses the word Adjudication.

62. Upon close inspection of what became DOCUMENT 13 it looks like a kindergarten art project.  DOCUMENT 13 is stamped within one minute of all of the pages that are part of DOCUMENT 1.  By inspecting them one can tell they were all printed from the same system at the same time and delivered to the Clerk by the timestamp.  In 2013-2014 someone printed it out from the record, covered something up on the bottom middle, drew the line back in, moved it to DOCUMENT 13 and then scanned it back in.  They must not have realized that they were selecting a page from a multi page document that was printed from the same printer with matching headers.  So

DOCUMENT 1 now tattles on DOCUMENT 13 that it was Frankensteined together. Especially since the court stamps were made within one minute of each other on August 24, 2006 but the documents ended up scanned 7 years apart and most interesting the chopped up page is the one that moved to make room for the alleged adjudication that is out of place and illegal.

63. Important to note in the Alabama SJIS Case Action Detail at this point following the December 12, 2006 hearing, there is a witness subpoena issued, that does not mention anything about an adjudication only that he needs to be at the final hearing in February. THERE IS NO "SERV SERVICE AND RETURN NOTICE ISSUED" like every other time an order was issued to the parties. The subpoena was received by Dean Friend by his attorney April Logan with a letter informing him of the change of counsel to Joel Collins and nothing mentions anything about an adjudication. Both of these documents are in Dean Friend's possession and he was never allowed to present in the 2022 proceedings.

64. Dean Friend along with his mother now Dorothy Mason, his son Joshua Mabin, about 16 at the time, and one of his son's friends headed to Alabama for the February 8, 2007 final hearing. On the way down Dean Friend gets a call from Joel Collins saying he has an important criminal trial coming up and says he would really like to continue this because he doesn't have any time to put into this right now. Dean Friend tells him he is almost there and needs to proceed now the time off from work and the travel costs are very expensive. He had a short meeting with Mr. Collins before going into the hearing. This hearing is when Judge Funderburk said "Ms.

Jernigan, we are having trouble locating your divorce records." to which she replied, "Well, I'm not technically divorced."

65. At that moment the only thing that was clear was that the Judge was irate at her admittance. He shuffled the papers. Ordered a 48 hour visit for Dean Friend which Regina Jernigan vehemently protested. Regina Jernigan asked about child support and Judge Funderburk said, "Ms. Jernigan, you can't have it both ways!" He then ordered both parties to go take drug tests and everything was over with Dean Friend never even testifying. He had his visit and went home waiting until June 2007 to receive an order in the mail that did not make any sense to him.

66. When Dean Friend called Joel Collins he was told you won. Move on with your life which makes even less sense to Dean Friend. He still legally did not know what happened and no one was explaining it to him. The Clerk's office would only say it's a one page order Mr. Friend, your petition was denied, you are not the father.

67. So Dean Friend harassed Judge Funderburks' staff until finally he answered and said, "Look Mr. Friend, I never should have heard that case. She was a married woman. You are not the father of that child. She has a father. " Dean asked, "What about the DNA tests?" The judge replied, "I am not allowed to let you see them by law."

68. Fall of 2007 Regina Jernigan told Dean Friend that he could have a visit if he came down from Pennsylvania. He arrived and the family passed him from house to house like the shell game saying maybe she is at the next one until her mom finally told him she is not going to let you see her just go home before you end up in trouble. After he was almost home to Pennsylvania Regina Jernigan called him and said, "Oh was that this weekend, my bad."

69. Winter 2007 to January 2010 Dean Friend attempted welfare checks until the Phenix City Police told him that Regina Jernigan showed them the final order and that he is not the father and that if he calls them again they will file felony harassment and that is extraditable. He resorted to attempting to call family members' phones occasionally but they would never speak to him and he would email her but she never responded. He could not even get proof of life. In April of 2009 Dean Friend met and subsequently married in October of 2009 Sandra Friend.

70. Around Spring of 2010 Dean Friend had finally accepted he would never legally be the father and he also would never be allowed to have a relationship of any kind with SLF. Dean Friend and Plaintiff Sandra Friend, his wife, became pregnant with their daughter HEF, now 12 years old. A short time after Regina Jernigan called from what seemed at the time to be out of the blue and let Dean Friend talk to SLF. Now it is clear she most likely was monitoring family members' social media accounts and learned of the pregnancy since Dean and Sandra Friend do not have any social media accounts. Dean Friend had health problems and was unemployed since 2008 and his wife Sandra, a Senior Software Engineer was the sole provider for the family. Regina Jernigan would ask Dean Friend to get Sandra to pay her cell phone bills, get her car repaired, pay for school lunches, pay for after school programs, buy clothes, all with the promise that he would get to talk to SLF. The only time he would get to talk to her was if the phone was about to run out of minutes so they would run put more minutes on the phone. After the six months of extortion they were permitted to drive down and "Mr. Dino" was allowed to give SLF Christmas presents in December 2010. She would occasionally threaten him with child support to which he would

reply, "Go ahead! If you manage to get child support then I will get visitation."  The only answer Dean Friend could ever get from the court house was that he was not the dad, his petition was denied, it was a one page order and he cannot open anything.  So he welcomed her attempt when the child was 5 years old and there was a chance for a relationship to be built, if he was the father.  He still had not seen the DNA tests.

71. November 2011, after very occasional phone calls Regina Jernigan agreed to bring SLF up for a trip to Pennsylvania, if Sandra paid all expenses and provided her with spending money.  Regina Jernigan and SLF were in PA for 2 days.  Up until this point Dean Friend had a few hours as "Mr. Dino" in 2010, a few sporadic phone calls, and a 2 day visit in November 2011. That was Dean and Sandra Friend's daughter's first Christmas.  In order to pay for that trip that year HEF got a $12 bath toy for her first Christmas.  A couple months after that was when Regina Jernigan began her relationship with Andrew Newton and it was not long before all contact ended with SLF until 2019.  There was one angry phone call from Regina Jernigan in 2017 letting Dean Friend know that her husband Shuan Jernigan had signed a paper so that Andrew Newton could adopt SLF.

72. In 2014 Sandra Friend became sick with a brain mass that the Neurosurgeons would not repair until March of 2019.  It then took several years for Sandra Friend to feel good enough to consider returning to work.  In 2017 Dean Friend began working full time as a Union Truck Driver.  Even though the pay was not quite as much as a software engineer it allowed the family to make their bills and keep Sandra's remaining energy on their daughter HEF and his stepson ERM, now 17.  March 2019 is also when SLF reached out to Dean Friend; they talked occasionally for a month or

so until she would get mad and ignore him for a year. This was having a very devastating effect on HEF who did not understand any of it. In 2020 SLF called again and said she would like to visit but her mom says there is too much sex trafficking in the airports and she doesn't have a birth certificate so she cannot.

73. February 2021 Dean Friend debunked the excuses letting SLF know that an adult can accompany her to the gate, he could buy an unaccompanied minor ticket and she did not need a birth certificate to fly. So she came up for her Spring Break.

74. SLF spent 2 weeks that February, she seemed to enjoy some of the time with HEF but also seemed irritated with her. She seemed to bond with Sandra Friend somewhat. She seemed most excited to see Dean Friend's son Joshua Mabin and his children. She was awkward, and very uncomfortable with Dean Friend. She did not want to be hugged and purposefully attempted to hurt him with pictures of her and Andy Newton at the "Father Daughter Dance" and various other pictures of all the places she traveled by herself over the same years that she could not come to see him because of sex-trafficking. She disclosed that she had been molested by one of her mothers boyfriends, her mother had gone to drug rehab in California, that her mother constantly threatens to have her committed, and that most of the family has no respect for her mother.

75. She went home to Alabama and Dean Friend barely heard from her until she called hysterical in June 2021 saying her mother kicked her out and her Grandma in Georgia wants to know if she can come live with Dean Friend. Audrey Johnson sent her to Pennsylvania on a one way ticket. It did not take long to realize that Pennsylvania was the last place that she wanted to be. She said her mother and her boyfriend

passed out drunk every night and that her mother's boyfriend walked out completely naked and saluted her. In the morning SLF told her mother that she wanted him out. She does not feel safe and her mother told her that she has sacrificed enough for her kids and now it's time for her to be happy. SLF was in PA to get her mother to flex. As soon as she had a promise from her mom that everything would be different the hurtful antics started right back up. She lets Dean Friend and HEF know that he is stored in her phone as "Sperm Donor". She let HEF know that her Dad only cares about her because he is still with her mother. She told HEF that she cannot stay in Pennsylvania because she really can't stand being around kids. She also accused Dean Friend of never fighting for her and he said he filed the petition for parentage, the court told him he could not be the father because her mother was married. He tried, the courts, the schools, the police, everyone's hands were tied to help because he had no legal rights. She said her Momma told her she filed and he ran. She saw where he was the defendant. There was no telling her any different. Until the IV-D case was opened the Clerk's Office in Russell County wouldn't give him anything because it was a sealed juvenile record and because his petition was denied he could not have anything other than the one page final order.

76. Over all she spent 2 weeks in February 2021 at the home Dean, Sandra, HEF and ERM share, 2 weeks in June at the home, 1 week on vacation in Ocean City with Dean, Sandra and HEF, and 1 week ignoring all of them waiting for the plane ride home to Alabama.

77. SLF called in February 2022 to tell Dean Friend she was dating a thug with kids. Finally he said, "if you are going to call just to say things that I cannot do anything

about to upset me please don't".  Apparently a few weeks after that is when Regina

Jernigan filed the IV-D case.  To be exact, she signed the petition March 4, 2022, it is

stamped March 21, 2022 and the PACSES system claims INTERSTATE

COMPLAINT FOR SUPPORT filed March 30,2022.  Which Dean Friend first

became aware of at the beginning of May 2022 when Beaver County Domestic

Relations mailed notice of the Title IV-D action.  The PACSES system claims April

29, 2022 ORDERED DEFENDANT TO APPEAR AT A CONFERENCE, ORDER

FOR EARNINGS REPORT, HEALTH INSURANCE INFORMATION and

SUBPOENA.

78. The action came with very little information, just the demand to appear at a

conference scheduled June 1, 2022, Regina Jernigan's application full of lies, the list

of invasive financial disclosures that Dean Friend and his wife must bring to the

conference and the Social Security Number disclosure notice.

79. Dean Friend first called BCDRO they said they had a paper saying he was

adjudicated the father December 12, 2006.  Dean Friend knew it must be a forgery

and demanded that they send a copy.  They agreed that they would send a copy of the

2 pages that they had, the Final Order and the Adjudication.  In the meantime Dean

and Sandra Friend began looking for an attorney to set up an appointment since they

had less then 4 weeks until the conference.

80. When Dean and Sandra Friend received the alleged adjudication paper it was

immediately apparent that there were 2 different handwritings on the paper.  That was

concerning and further raised suspicion of a forgery.  The letter height, spacing,

relation to the line, weight of the stroke, and shape of D's, n's and r's were

significantly different. They were told "so what" if two different people wrote on it if the judge signed the order.

81. Dean Friend Called BCDRO and was put through to Frank Platz where he raised his concern that this document was a forgery that no such adjudication happened. Regina Jernigan was a married woman and that he was not the father and never had been. Frank Platz said the document was sent to him by a court official "Deamber Hoyle" of the ADHR and that was good enough for him. It isn't his job to investigate.

82. The next call was to the Russell County Clerk of Courts Office, where Dean Friend reached Joni Cauthen on the first call. She said, "There is nothing in this record that says you are adjudicated." She also asked if he had taken DNA tests and Dean told her that he had taken them but never got to see the results. She told him, "That this record says your petition was denied and that you are not the father." Dean asked if he could have his BCDRO call her so she could tell them. She said yes. He said hold on let me put you on speaker phone so my wife can write this down. She said okay. Sandra Friend got pen and paper. She said her name was Joni. Sandra Friend asked her to spell it. She spelled it and gave her phone number. Sandra Friend repeated it back.

83. The next day Dean Friend called the BCDRO and requested the office transfer him to Frank Platz. When he got through he briefly explained that he was at work and asked Frank Platz to call his wife to talk about what was found out so far.

84. Frank Platz called Sandra Friend and said that he called Joni and she told him they don't have an adjudication paper but he doesn't care what she has to say she is a nobody so it doesn't change anything. Sandra Friend could not believe what she was

hearing that Domestic Relations was marching forward when the Clerk of Courts office was not verifying the accuracy of the document and Dean Friend said no such adjudication happened.

85. Dean and Sandra Friend met with Attorney Gerald Benyo Jr, on May 10, 2022 at 4:30 PM.  First they met with his assistant and handed off some papers for her to copy, she seemed easily confused by the details, but they waited to meet with the attorney. They paid $100 for the consult and after laying out the facts that Dean Friend had filed a petition in 2006 was denied in 2007, had almost no contact with the minor for the previous 15 years and now the mother had filed a Title IV-D request to Initiate Support with a request for retroactive support to 2006.  He explained that he had lived in 2 addresses since 2010 and she had both of them.  His phone number had not changed, email was the same.  There was no reason for her to wait until the child was 17 except to make sure that the only gain was money. The result was attorney Gerald Benyo Jr agreed to represent Dean Friend for $2500.00 "no matter how many hearings it took" "1 or 40" "this is the kind of case law students dream of" "he will enter his appearance" "check in with BCDRO and let them know there won't be a conference this needs to go straight to a 2 day hearing!".  Dean and Sandra Friend were relieved that they had an advocate on their side and no longer worried about the conference they went to gathering evidence. Mr. Benyo also suggested that it may be necessary to fight the alleged adjudication from Alabama.  However at that point the Clerk still had not found any record that it had happened.

86. Dean Friend called back to the Russell County Courthouse and asked for the elected Clerk of Court Jody Sellers.  He had talked to her several times throughout the years

as she worked there under Mrs. Coulter when the case first began. She looked

through the record again and advised him that "there is no adjudication in the record"

"it is a one page order" "his petition was denied". She advised him he should write a

letter to Judge Zack Collins about what is going on and that there appears to be some

discrepancy with the record. Dean Friend asked his wife to write a letter to the judge

for him. Dean Friend has problems expressing himself through writing and

frequently asks his wife to go over his thoughts and translate them into a linear,

cohesive, readable format for others especially when it is an involved matter. His

wife as mentioned previously suffered from a brain mass and subsequent major brain

surgery, many years of recovery and tasks such as those/this take time and energy she

does not always have. The letter took her about a month to put together. In the

meantime they called Muscogee County Clerk and ordered certified copies of Regina

Jernigan's complaint for divorce and Final Decree.

87. Sandra Friend gave Attorney Benyo's assistant a check for $2500 dollars and made

repeated requests for the contract but never received a written agreement from his

office. Dean Friend was extremely nervous as the June 1, 2022 conference date

approached and he had not heard anything from Attorney Gerald Benyo Jr. The day

that the conference was scheduled Dean Friend had a conflicting doctor's appointment

scheduled. That fact had been clearly communicated to Attorney Gerald Benyo Jr

and his staff. Sandra Friend called Attorney Benyo's assistant to find out if they had

gotten the conference continued yet and when the hearing would be. Attorney

Benyo's assistant would not give any straight answers and avoided the calls. On June

1, 2022 Dean Friend made it back early from his doctor's appointment and they called

Attorney Gerald Benyo Jr to find out if they needed to be there. Attorney Benyo's assistant said no need, nothing was going to happen, they would just be scheduling the trial. A couple of hours later Sandra Friend gets a text asking questions about Dean's pay stubs and employment dates. A few more hours later Dean gets a text from Attorney Gerald Benyo Jr telling him that he has been ordered to $940 a month support with $90 a month arrears, that they calculated his annual income at 91k which he never made a day in his life. Dean was livid. He called Attorney Benyo's assistant and she said well at least they didn't go retroactive, it's only from her file date. He felt like what part of "she isn't my kid" and "I shouldn't have to pay at all" do these people not get.

88. On June 1, 2022 Domestic Relations issued an ORDER TO ATTACH DEFENDANTS INCOME and UNEMPLOYMENT COMPENSATION ATTACHMENT ORDER ISSUED

89. On June 2, 2022 PACSES system states INTERIM ORDER IN EFFECT (CONFERENCE OFFICER)

90. The next day Dean Friend called BCDRO and Frank Platz again said he doesn't care what the court has or doesn't have, he has a document with a court stamp on it and that he doesn't have to investigate. His job is to make sure Dean pays. He said he will come to his house and drag him out of bed by his hair if he has to take him to work. Frank Platz said he has his ways but he will make sure he pays. Frank Platz also said Dean would have been better off not hiring an attorney at all because he couldn't tell whose attorney Benyo was. He folded so fast Frank Platz thought he was Regina Jernigan's attorney. Dean and Sandra thought Frank Platz was saying that to

incite them at the time, but after seeing Benyo in action and looking at the result of the conference. That may be the one true thing Frank Platz said.

91. On June 2, 2022 Dean Friend also made a call to Joel Collins office. The woman that he reached in the office could not find the adjudication in the record. So he had her call his wife so that she could email the alleged adjudication to gadog****@*.com to see what could be found. After it was emailed and she had about a half hour's time she called back and said that she did find it but the reason it could not be located was because it had been added in later. She said she assumed because Alabama had gone to electronic records in 2007. However she, nor the Friends knew at that time that Russell County was in the pilot program since 2005 so they were already using alacourt and there was no reason to hang on to a couple documents from a record and add them later. Sandra Friend did not write down the woman's name nor the date that she said it was added because at this point she was still unaware of just how criminal the actions of the Clerk's office had been and believed everything was most likely an honest mistake that once revealed everything would be fixed.

92. June 2, 2022 Dean Friend sent a request for records from the Russell County Clerk of Courts office using this exact statement:

   a. *"I am requesting copies of all papers, orders, motions, answers and such in regards to Case No 06-247.01 and JU 06-247.01 and any other prefix attached to 06-247.01 under my right as a participating party in the requested case. This is in regards to a pending child support case and I am pleading for relief in a timely manner."*

50

Dean Friend sent that request June 2nd, 2022 for all papers in the record excluding none related to JU-2006-000247.01.

93. At some point in these few weeks Dean Friend reached out for the first time to Kay Ivey's office and after explaining everything that happened the person that answered the phone promised to reach out to someone in charge and have her call back. The female that called from ADHR legal by request of Kay Ivey's office did not identify herself. Dean Friend attempted to explain all that had transpired in 2006-2007, how he had filed the petition for paternity, that Regina Jernigan lied and said she was divorced, he took the DNA tests, couldn't make it to the hearing in December and it was continued until February, at that hearing it was discovered she was still married and his petition was denied. Judge Funderburk should have entered a dismissal since he discovered the court did not have jurisdiction to enter an order for a petition that could not be filed in the first place but instead 6 months later he entered a convoluted final order that said Dean Friend's petition for custody was denied (which he had not filed for), custody remains with mother, and visitation between father (not specified) and minor at mothers discretion and costs assessed (which was none). Her response was that the record has an order with a judge's signature in it and that is all she needs. There was absolutely no talking to her, she repeatedly said she didn't care, she would not investigate and that paper was good enough for her even though it made no sense, did not follow any laws and she offered reasons like maybe he did not show up to take his DNA tests or never showed for the final hearing for reasons why the adjudication looked so ridiculous. When the rest of the record shows up in spring of 2023 it is discovered that the proof was there and they all knew he took the tests and

that he showed up and there was no reason for an adjudication to look like that. It was more lies and cover up on Russell County Clerk and ADHRs part.

94. Dean Friend called Jody Sellers back to say he made the request for records and to find out what he is supposed to do and she asked him why he had not written his letter to the judge yet. She can't help him if he isn't going to help himself. Dean's wife got right on the task at that point and sent the letter certified mail with tracking on June 16th, 2022. That letter states that at this point the Clerk's office is still claiming that the adjudication is not in the case file. Either that same day that Sandra Friend dropped off the letter or the next day Dean Friend called the clerk's office to let them know that it was on the way. At this point Dean Friend reached and met the real Joni Cauthen and everything changed.

95. "I never said you weren't the father. I found it. And I don't have a total for the record yet " she said. Dean said, "How did you find it?" She answered, "I just had to dig a little deeper." Dean pretty much flipped his lid at this point "Dig a little deeper, dig a little deeper, why couldn't you dig a little deeper all those years ago when I asked." Dean told her he wrote a letter to Judge Collins and he will get this sorted out to which Joni Cauthen told Dean Friend that those letters come to her and he will get it if she gives it to him. Everything had shifted and Dean Friend had no idea why. All he could do was request a De Novo trial in Pennsylvania for the Interim order, request a stay on the collection since he would never get any of his money back once it was given to Regina Jernigan, wait for the response to the letter he sent to Jody Sellers regarding investigating the file and wait for the copy of the file to figure out what happened. It took several phone calls and nearly a month, and reaching back over

Joni Cauthen's head to Jody Sellers to finally get the certified record sent out. In the meantime he had already received the divorce complaint and final decree from Muscogee County, Georgia.

96. Dean Friend received around the same time as the certified records from Clerk Jody Sellers an electronically signed order from Judge Zack Collins stating simply that that adjudication from December 12, 2006 had been located and could be requested from the Clerk's office. Joni Cauthen later told Judge Laura Tocci was a readjudication of Dean Friend according to Nicholas Frisk III after the status conference hearing October 25, 2022.

97. Dean Friend received a summary of events emailed to him from Mr. Benyo of the June 1, 2022 conference. There were almost no details right, his income, her income, his health insurance request, his stance on paternity, or the retroactive year. There were issues raised at the conference as to the residence of the child and the school district and records of the child. Which were never provided and by law when the initiating state refused any cooperation beyond sending a request for money with two unauthenticated creased illegible closet documents from the mother required that the responding state close the case. The attorney representing Regina Jernigan from the BCDRO raised this issue to Judge Laura Tocci at the September 2022 hearing which she had led Dean Friend to believe was continued to a status conference.

98. The divorce complaint Regina Jernigan filed with the court was full of false statements. She had not separated from her husband since 2000 since she was still living with him at his mother's house when Dean Friend met her in 2004. She was well aware of the fact that Russell County had not found Dean Friend to be the father

of SLF because she was married yet she put no minor children of the marriage to avoid initiating a child support payment for SLF by her husband Shaun Jernigan. The final decree ordered her name to return to Regina Jenkins 6 years ago as of yet it has only been updated on Facebook.

99. When the Russell County Clerk Of Courts sent the certified copy of Dean Friend's petition for parentage and visitation of 2006 against Regina Jernigan he retained attorney Melissa Thomas of Phenix City Alabama to go page by page to help make heads or tails of the record and get advice to proceed. The consultation between Sandra Friend and Melissa Thomas was scheduled on August 3, 2022.

100.    Prior to the conference to have the most information possible Sandra Friend reached back out to Joel Collins to try to get the time that she said that the alleged adjudication had been added to the record. This was July 28, 2022. On July 29, 2022 a response was received saying that search does not pull anything up about an adjudication, so she emailed an image of the alleged adjudication and then Attorney Joel Collins eventually found it.

101.    After the consultation with Melissa Thomas, she advised reaching out to Attorney Eric B Funderburk. He refused to speak about it. She advised asking the Clerk for the paper copy. The Clerk said there isn't one. She advised reaching out to all of the attorneys that had been involved. April Logan responded, "There is no way on earth I ever would have ever let an adjudication happen without you being there." Then after she looked into the record she said, "Well I guess since it's written in your record it must have happened." Dean Friend emailed a request to Joel Collins on August 3, 2022 for a copy of the Alabama SJIS Case Action Summary and it took until August

8, 2022 to get a response. They each keep only sending the case action detail when the summary is requested, which leaves out the images, parties, payments and who knows what else. Interestingly enough the December 12, 2006 entry now says an adjudication happened that day even though everyone for months looking at the exact same case said they could find no evidence of an adjudication unless Dean Friend or his wife sent them a copy of the alleged adjudication first.

102.    On August 9 ,2022 was supposed to be the De Novo hearing in Pennsylvania but it got continued. PACSES refers to it as MISCELLANEOUS DOCKETING TEXT. One was granting a motion demanding the court record from the clerk and the other was granting a motion to place a stay on any collections until a final hearing is had

103.    On August 26, 2022 a response was received from Joel Collins regarding a request for him to look into his notes or records. Asking if he could remember anything about the case or could help at all. His response was that any records would have been destroyed including notes exactly right before Regina Jernigan made her request for records in November 2013, or what was thought to be a standard request for records during the time frame of the child support case in Pennsylvania. The current Clerk's office however held back that document because it wasn't a request for records, it was a request to "unseal the record" and it was the only document in the entire record recorded as "miscellaneous" at the time.

104.    A couple weeks before the final hearing Dean Friend has a meeting scheduled with Mr. Gerald Benyo Jr. When he and his wife arrive Mr. Benyo doesn't seem to be around so Attorney Benyo's assistant starts photocopying papers that they brought with them. They talk with her about things that they have discovered. She seems

stuck on the "well at least you don't have to go back to 2006", like there is consolation that the robbery is only tens of thousands of dollars and not the hundreds of thousands she was trying to steal.  Dean Friend continually gets threatened by everyone that if he tries to resist at all, that could change.  Mr. Benyo showed up after about a half hour and then left, never meeting with them at all.  Attorney Benyo's assistant said oh you didn't confirm that you were coming for the meeting.  Not true.

105.    A meeting was then scheduled for the end of day on September 21, 2022.  As the evening time approached Sandra Friend received a text saying that Mr. Benyo was stuck in court and that he would meet at the office at 8am.  The hearing was at 9am and check in was by 8:45am.  It seems to the Friends like he is intentionally tanking their case.

106.    The sham De Novo was scheduled for September 22, 2022 with Judge Laura Tocci in Beaver County Pennsylvania Courthouse.  The Friends arrive outside Gerald Benyo's office, one block from the courthouse, at 7:45 am in case there is a chance of meeting early.  Sandra Friend has a 3 inch thick binder with her.  It has the:

    a.  The Certified copy of the juvenile case from Alabama

    b.  The Certified copy of divorce complaint and Certified copy of the Divorce Decree

    c.  The Alabama Uniform Parentage Act of 2006 and all laws governing the establishment of a parent child relationship at the time Dean Friend filed his petition.

    d.  The Case Action Summary and an analysis of the errors, and document placements over time.

e.  Pictures of the minor child going by another man's last name the previous 8
    years on multiple Facebook profiles as recent as that day, picture of her name
    listed as a grandchild in that man's father's obituary.

f.  Case Law in both Pennsylvania and Alabama from 2006 through 2022
    supporting both principles the "husband is the father" and cannot be made not
    the father without being joined which supports Dean Friends' allegation that
    his petition was denied not adjudicated.  The second principle that both states
    agree that when a mother has cut a person completely out and allowed another
    man to play father being the child's entire emotional, physical and financial
    support system for that significant of a time period that to come at Dean
    Friend now that the child is 17 years old and there is no parent child
    relationship to speak of nor any chance of creating one that both states agree
    the Mother is not entitled to child support from Dean Friend that she should be
    seeking it from her husband (the legal and possible biological father) or from
    Mr. Newton (the last acting father and the one bonded with the child).

g.  A list of frauds, perjuries, and false statements made by Regina Jernigan

h.  A salary analysis for a CDL truck driver in Beaver County Pennsylvania,
    earnings history back to before 2006, proof of all earnings so far for the year,
    and statement regarding the closing of construction of the Cracker plant and
    the job loss to the area.

i.  All communications from Domestic Relations and the collection attempts
    made even though a stay had been put on the interim order until the final
    hearing.

j.    A listing of multiple pregnancy calculators all in agreement that given the one

day that there was for possible conception unless Regina Jernigan had the

world's worst OB/GYN and SLF was going to be a world record holding large

baby Dean Friend was not in the list of genetic possibilities.

107.    Gerald Benyo Jr walked into the office a little after 8am with an empty notebook

and looked like death warmed over.  Dean Friend asked him if he was okay and Mr.

Benyo said, "The Doctor's have my med's all screwed up. I don't think they know

what they are doing."  He joted some notes and made some copies of things out of

Sandra Friend's notebook but he was completely out of it.  Dean Friend asked if

Regina Jernigan would be testifying and Mr. Benyo said he didn't know.  Dean Friend

asked how is that possible, every bit of this is based on her lies and we don't even get

to question it, we don't get to see what she wrote?  When Mr. Benyo asked about the

fourth time since they met him "So you're not on the birth certificate"? And for the

4th time they told him no they just knew, he didn't know enough, was completely

unprepared and they were scared.  After 15 minutes Mr. Benyo excused himself to his

office and told them to wait outside the building for him and they would walk over to

the courthouse in a minute.  From 8:30 until about 8:50 Dean and Sandra Friend

waited, but check in was at 8:45am and they were getting scared he was going to

make them miss the whole hearing so they left and walked over to the courthouse

checking in at 8:55.  Around 9:15am when the judge was giving instructions to the

Pro Se people which Dean and Sandra Friend decided to attend Mr. Benyo came

walking in still looking horrible.  They sat in the hallway and Mr. Benyo would

occasionally sit down and go over some things with Dean Friend about what to say

and not say. Dean Friend and Mr. Benyo butted heads when Mr. Benyo told Dean

Friend that he was to say that Regina Jernigan's husband Shaun Jernigan held the

child out as his own and Dean Friend said but he didn't and I am not going to say

that, it was Andy Newton later. Dean Friend told everybody if the truth isn't good

enough then so be it.

108.    Mr. and Mrs. Friend were very clear with Mr. Benyo that they wanted to make

sure that the record preserved their right to appeal and the list of laws and case laws

that needed entered and the list of evidence that needed entered. They were appalled

that the only evidence offered by the other side continued to be the illegible pieces of

paper from Regina Jernigan's closet. The ADHR had made no response to any

requests for information. There was no testimony offered from the mother, written,

deposed, or by video conference. No chance to question anything. Judge Laura

Tocci made a comment that she thought "this was numbers hearing" which was

shocking to Dean and Sandra Friend that obviously Mr. Benyo had not made it known

that there was any question as to the phony adjudication. Judge Laura Tocci also

made it known that she was leaving that afternoon for vacation and was not expecting

this hearing. So much for "this needs to be a 2 day hearing". That comment was

made around the time that Mr. Benyo started to introduce the Alabama Adjudication

laws and that the continuance form that was being offered does not match any of

Alabama laws. Judge Laura Tocci was also presented with a sample adjudication

from Alabama and all the elements that need to be included even in a default

situation. The divorce records were entered proving that Regina Jernigan was

married at the time since the BCDRO Attorney representing Regina Jernigan

questioned the facts.  Dean Friend attempted to explain the proceedings in Alabama and how they happened, but was continually interrupted and never allowed to fully explain.  Mr. Benyo entered the pictures of SLF using another man's name for years and listed as a grandchild in his obituary.  This is when Mr. Benyo stopped talking about the case and just moved on to numbers then Judge Laura Tocci asked if anyone thought to speak to any of the attorney's involved, but Dean Friend was never given a chance to answer, he was never given a chance to go all the way through the Alabama SJIS Case Action Details when the judge said what's all this other stuff that happened after the case was closed?  Dean Friend was not allowed to respond when the Judge said, has anyone talked to the Clerk's office?  Judge Laura Tocci, ready to leave for vacation, said she was going to continue this for the Status Conference and was going to call the Russell County Judge and ask about this adjudication, because it does seem strange that it would not line up with any of the laws.  This is when the BCDRO Attorney surprised Dean and Sandra Friend because despite being quite adversarial during the partial hearing (like telling a woman in the hallway before trial that due to estoppel she could not have child support for her 3 year old and then pretending like he never heard of such a thing in Judge Laura Tocci's court) he obviously recognized that there was something seriously wrong with the Friend's attorney and pointed out that they needed a motion to rewrite the Stay on Collections because it obviously had not been clear enough to Frank Platz because he had already taken multiple negative collections actions and was refusing to back off saying that he wants that money sitting there waiting for Regina Jernigan.  The BCDRO Attorney also pointed out that several attempts to request relevant information from the initiating state had gone

unanswered which would have been immediate grounds to close the case had the

Judge or Mr. Benyo cared at all about Dean Friend's rights.

109.    Immediately following the continued hearing Dean Friend fired Attorney Benyo.

Attorney Benyo agreed to enter a motion to withdraw, which included direction by

the Judge to hire another attorney so as not to delay the status conference scheduled

for October 25, 2022. Dean Friend retained Attorney Nicholas Frisk III who by

contract, verbal agreement and written into the motion signed by the judge and filed

with BCDRO  all informed Dean Friend that Benyo was out and Frisk was in.  Before

retaining Mr. Frisk all the details, laws, case laws were presented, the demand not to

accept anymore of these backroom meetings, that the rest of this trial needed to be in

open court where the evidence can be entered, and testimony on record with the

appeal in mind.  No numbers were to be accepted.  For the first week after another

$2400 was paid for a "mini brief", appearance at the status conference, and

appearance at the final hearing everything was on track. After the contract was signed

and the Status Conference drew closer an explanation was given that if there was no

need for a second part to the hearing that would not mean there would be a refund,

because that means there was a satisfactory outcome.  It was fully expected that a

satisfactory outcome would be reached since the Russell County District Attorney, the

Russell County Clerk of Court and for investigative purposes the multiple other

County Clerk's in Alabama all said that did not look like any adjudication that they

had seen ever.  The Russell County District Attorney had also used the phrase "illegal

action".  It was unimaginable that Judge Laura Tocci would call the Russell County

courthouse and hear anything other than the truth regarding what the adjudication law

is in Alabama and what had transpired so far in locating the alleged adjudication.  Mr.

Nicholas Frisk III remained mostly unavailable up to the status conference date after

the initial phase of getting up to speed.  The day before the status conference he kept

avoiding having a phone conversation with Sandra Friend regarding the evidence and

laws and seemed to have a 180 in a conversation with Dean Friend.  After waiting up

late and many delays to see the "mini brief" Sandra Friend finally texted a warning

that she would be at the Status Conference if he needed her with her evidence out of

fear that he was not going to show up and that maybe Benyo had never truly

withdrawn.  In front of Judge Laura Tocci's court 30 minutes prior to Status

Conference time the hall was empty.  About 20 minutes prior, Gerald Benyo arrived,

said hello to Sandra Friend and went to the court next door that was handling other

criminal cases that day.  About 10 minutes prior, Benyo walked back into Judge Laura

Tocci's court which looked closed for the day, no tipstaff and no one going in or out

of the doors, no one waiting in the hallways.  About 5 minutes prior, Benyo, still

inside Nicholas Frisk III, arrives and sits next to Sandra Friend and presents a piece of

paper that looks like typed notes using Notepad. Certainly not a professional

"mini-brief" of laws and case laws to be presented to the court. Gerald Benyo Jr

walks out and says hello to Nicholas Frisk III and makes a passing comment that he

"just wanted to check in, in case he [Frisk] wasn't going to make it".  Attorney

Nicholas Frisk III goes through the double doors into the main courtroom and through

the backdoor into whatever is back there that the regular people do not get to see.

After a few minutes he comes out and says they are not ready.    That gave a long

time for Nicholas Frisk III and Sandra Friend to talk about the case, it seemed as

though they were on the same page and he was going in to make sure that this was dismissed or they were continuing the trial so the rest of the evidence and testimony could be entered. About 9:30 it became clear what the hold up was when someone from the Judges office came out and said they still could not find the BCDRO attorney. Sandra Friend was updating Dean Friend with text messages about the goings on since he was at work. They both thought that was a good sign, maybe when the Judge spoke to Alabama court they told her that was an illegal action and that his petition had been denied. Hopefully they were just waiting to find out the nightmare was over. A few more minutes went by and they called Nicholas Frisk III in to "start without him [the BCDRO attorney]". About 45 minutes into what was supposed to be the Status Conference the BCDRO attorney shows up for an honorary appearance. He walks in for 5 minutes and then walks back out by himself. The 10 o'clock Status Conference appointment has now arrived and is waiting in the hallway with Sandra Friend. About 5 minutes after the other attorney came out Nicholas Frisk III came out and gave a good story. He says that Dean was ordered to $795.00 per month starting from file date until August 12, 2022. He said that the judge asked for a number since he became unemployed and Nicholas Frisk III said he just threw a number out there and never expected her to take it and it was lowered to $435.00 plus $90.00 arrears. He said that he was considering that a satisfactory outcome and that he would not appeal this no matter what they paid him. Nicholas Frisk III also said that when the Judge spoke to the clerk in Alabama she told her that this is what all adjudications look like and that she would swear on a stack of bibles that Dean Friend told her that he saw his DNA test results. Which was an absolute lie. He told Joni

Cauthen that he had taken his DNA tests, but he never saw the results. Nicholas Frisk III said that the Judge "feels bad for him and that they obviously took advantage of him" but "if she does not rule then Alabama will come after him for the support and they will go retroactive". When the court order showed up from a Status Conference that took place October 25, 2022 all the dates said October 24, 2022 and the 24 was crossed out and 25 written over top. This prompted Sandra Friend to log into the PACSES system and see that the order was entered October 24, 2022, one to garnish wages and one to garnish unemployment. Still not sure this is conclusive evidence that the deal was made prior to the Status Conference and that the court had engineered a Dog and Pony show on October 25, 2022 to appear like Dean Friend had an opportunity to make some argument on his behalf to finish the trial that had been started and give him a chance to finally be heard, Sandra Friend logged into Dean's PA Unemployment account and could see in the message center that the garnishment had indeed been sent a day prior to the Status Conference. Perhaps the Beaver County Courthouse could manipulate their own timestamps but they had no authority or privilege to unsend messages that had been delivered in the PA Labor and Industry system. At first Nicholas Frisk III denied everything but once confronted with the unemployment timestamp proving that the order was entered he tried to back peddle saying he never entered his appearance until 5 minutes before the status conference. He informed the Friends verbally that he was emailing Attorney Gerald Benyo Jr to enter his appearance when Attorney Gerald Benyo Jr withdrew. This was evidenced by the write-in statement on the withdrawal recorded in the BCDRO system and was provided to Sandra Friend with a court stamp. At that point he admitted that Attorney

Gerald Benyo Jr told him to play along because the Friends had no recourse.  When threatened with a Bar complaint Nicholas Frisk III just said "I understand if you have to do what you have to do."

110.    Once again Dean Friend reached out to Kay Ivey's office because for months he had heard everyone in Alabama except ADHR say, get a good attorney in Pennsylvania and hopefully your judge can sort through it up there.  So now he wanted her office to know that Pennsylvania marched forward on the word of Ms. Ivey's ADHR administration and the sister (Joni Cauthen) of the elected Circuit Court Clerk Jody Sellers that this adjudication happened in her state despite the laws, Dean Friend's protest and the Case Action Detail that showed someone modifying and altering the record 7 years after it was closed, and not a little bit, a lot.  The person that answered once again promised to have someone from ADHR reach out.  When Dean Friend got the call and she said, "Oh I remember talking to you, I told you I have a judge's order." When Dean Friend demanded her name, she hung up on him.

111.    Now that Alabama and Pennsylvania courts, Human Services, the Title IV-D, and Attorneys from both states are involved Dean Friend reached out to the Federal Court for assistance.  After realizing that the Federal Human Services is only available to assist individuals in collecting child support, there is no one responsible for helping someone who is being criminally taken for child support.  That is when Dean Friend and his wife began working on the Federal complaint for violation of Civil Rights.  Digging into the Certified record sent from Russell County it was clear that:

a. That the records had 2 very distinct scan marks. One set belonging to the records that were entered in 2006-07 and a second set belonging to the records that had been scanned in 2014 after "mother's request for records".

b. Many questions were surfacing about the activity in 2014. Why was mothers request entered as miscellaneous when no other document was ever entered that way? Why send some of the 2014 entries, what were the Attorney billing statements hiding? Why was the name missing of who scanned in documents, and why was the Clerk's office refusing to give up the name of "VIW" who did all the 2014 alterations.

c. The Friend's needed the missing documents that were originally withheld, because seeing the chopped up documents and that the phony adjudication had been added in 2014 it was obvious that there may be more that was being hidden.

112.    Once the Friends were sure that the records had been altered and that the continuance had been scanned in 7 years after the petition had been filed, denied and right after "mother's request for records" the Friend's asked the District Attorney of Russell County Rick Chancey to investigate, to request that the Clerk admit that this record is not reliable and needs investigated, to raise it to the Alabama Administrative Office of Courts if need be. Mr. Rick Chancey, sitting with Melissa Thomas (the Attorney that originally advised the Friends that nothing is benign in the record, those document numbers mean something and there is definitely something off in this record and that they needed to request the paper record) said that he wasn't sure if he saw a crime here but that he sees a great civil case. The Friends were appalled; they

66

explained that the record was fraudulently tampered with, creating a false impression allowing a theft of a great deal of money to take place currently. That is a crime in Alabama then and now. Regina Jernigan presenting the altered documents to DHR to steal money from Dean Friend is a crime.

113.    The Friends also notified Jody Sellers, the elected Clerk of Court for Russell County that they would be making a request for certified copies of the record again. That this time when they say everything they mean including the documents that they can see were obviously left out and any others that they cannot see that were left out. They stated clearly the accusations that they were making regarding the alterations to the record and were sending the email in plenty of time before making the written request so that she may investigate and hopefully come to a conclusion that the record cannot be certified as true and accurate. They created visual aids to assist in pointing out the inconsistencies in the documents. Eventually after waiting some time and contacting more state agencies, officials and requesting intervention to no avail, the Friends sent the written request with ID, a printed copy of the previously sent email and another $105.00. After about a week the record showed up with about 23 more pages then last time "everything" was sent and still missing DOCUMENT 19, many things that should be there and who knows what they have that they are intentionally hiding now.

114.    On first observation and to date list of discrepancies with the record:

a.    Two more pages turned up as part of DOCUMENT 1, the initial petition, then the first time the record was requested for the Pennsylvania court hearing for child support Summer/Fall 2022.

b.  Jody Sellers is maintaining that DOCUMENT 2 is the alleged adjudication in this second certification of the record.

c.  No changes to DOCUMENT 3,4,5,6,7,8,9

d.  DOCUMENT 10 Billing Statement from Laurel Farrer attorney for the mother filed July 6, 2007 at 7:57 AM.  Things glaringly wrong

   i.  11-27-2006 She has a copy of DNA test results from DHR which now they do not have and claim he must not have taken and they do not have to provide.

   ii.  12-12-2006 She claims she reviewed the motion to continue, that child support was ordered in a 1.5 hour hearing, The G.A.L. Parker billed for 1 hour hearing and just says "court", Dean Friends attorney April Logan billed for .6 hours in court that day and for Letter to Client RE: continuance and drafted income affidavit for Client. Not one of them said an adjudication happened that day in the billing statements and the record in no way reflects nor has anyone claimed there was ever a child support payment initiated prior to Pennsylvania starting March 22, 2022.

   iii.  She billed for the hearing on 2-8-2007 which DHR tried to claim Mr. Friend must not have attended and that is why it was missing from the record.  Dean Friend was awarded a 48 hour visit at the hearing which somehow translated to awarded visitation.

   iv.  She also claims that the case was disposed of by "Visitation awarded to father" but the case action summary disposition code says case

disposed of with disposition "Petition Denied" and with a sealed

record and no adjudication there was no visitation award beyond the

48 hours immediately following the final hearing.

e.  DOCUMENT 11 was included in the initial group of documents sent but it

was the first of the group added in 2014.  This is captured in the case action

summary "1/9/2014 10:42 AM ESCAN SCAN - FILED 2/7/2007 - NOTICE

OF APPEARANCE VIW". Starting with this document one can see how the 7

year difference changed the markings on the documents when they are added

to the system.  DOCUMENT 2 (continuance/forged adjudication) matches

these markings not the 2007 markings.  This document records the entry of

Joel Collins and makes reference to "Natural Father" but in absence of the

DNA results and the ability to authenticate them this is nothing more then

typical legal posturing.

f.  DOCUMENT 12 is consistent with the 2014 markings.  This document's entry

into the record was captured in the case action summary " 1/9/2014 10:44 AM

ESCAN SCAN - FILED 2/14/2007 - ORDER VIW".  Regina Jernigan's drug

test and order to pay were sent in the first request but the second 2 pages,

Dean Friends drug test and order to pay were not sent until the second request

in 2023.  These two pages would have proved that he was there for the

2-8-2007 hearing and would debunk the myth that he was adjudicated by

default, never told about it, never ordered to child support and the 2-8-2007

final hearing wasn't in the record because he must not have shown up

therefore giving Pennsylvania further evidence that Dean Friend was telling

the truth. He filed the petition, she lied about being married, the judge found

out, denied his petition because he could not file, sealed the record but made a

strange and vague Final Order he had no jurisdiction to make paving the way

for 7 years later Regina Jernigan, the clerk's office employee Vickie Wallace

and operator JCP (believed to be Jo Anna Chancellor Parker based on known

participants) to engage in a criminal act to modify the record in an attempt to

adjudicate Dean Friend themselves.

g.   DOCUMENT 13 arrived the same both times. By time stamp it can only

rightfully occupy one of 2 spots, it could be part of DOCUMENT 1 or it can

be DOCUMENT 2. As stated DOCUMENT 13 has very strange irregularities

and looks as though it was mutilated from its former DOCUMENT 2 status

and renumbered making room for the forged adjudication which matches the

2014 markings. This document's entry into the record was captured in the

case action summary " 1/9/2014 10:47 AM ESCAN SCAN - FILED

8/24/2006 - AGREEMENT VIW".

h.  DOCUMENT 14 was also intentionally left out of the request for

"everything" prior to the child support De Novo hearing in 2022 from the

Clerk's office. Had this document been received the honest mistake theory

would have been wiped out in plenty of time to piece together what had

happened. This document's entry into the record was captured in the case

action summary " 1/9/2014 10:48 AM ESCAN SCAN - FILED 11/19/2013 -

MISCELLANEOUS VIW". At first it looked like some benign documents,

an appearance, some drug tests and some requests for payment were uploaded

in 2014, no reason to be alarmed.  Sandra Friend had a phone call with Cary

McMillan head of family court division in August 2022, and Mrs. McMillan

went page by page through the record giving Sandra Friend a chance to ask

what the documents were that she could not see.  Mrs. McMillan's husband

had just passed away three weeks prior, so trying to be sensitive and grateful

for the information Sandra Friend tried to get as much content from the

missing documents as she could.  Mrs. McMillan said DOCUMENT 10 was

just an attorney billing statement.  DOCUMENT 14 was "mother's request for

records" (which Dean and Sandra interpreted to be just like their own, a letter

with a picture of ID), and DOCUMENTS 15,16 and 17 were attorney billing

statements "that were probably added because at some point a directive was

issued that if your billing isn't submitted you won't get paid).  Now that the

Friends have a copy of these documents it seems odd that Mrs. McMillan was

looking right at them and saying what she was saying, understandably she was

in a time of significant stress and was very clear that she was not in her best

frame of mind and just trying to help.  DOCUMENT 14 was not a "mother's

request for records" in a traditional sense.  According to Alabama Code 1975

12-15-133(d) at the bottom of the document she is on the list of people that

would not have to fill out the request for documents if this has just been a

normal paternity established with a final custody order.  Mother should have

been able to come in with her ID to the Clerk's office and walk out with

copies of the adjudication if it had been in the record, and the DNA results

(which DHR should have had since they sent them to courthouse in 2006) and

walk right over to DHR and request an Interstate child support action to be resumed. Instead there is another forged document in the record. Sandra Friend contacted the Alabama Supreme Court Law Library Reference Section and requested the specific revision used by Regina Jernigan Form JU-3A Rev. 6/12 and they returned one that proved that there should be boxes in front of the Grant and Deny regions of the form. Sandra also requested the same from the Administrative Office of Courts and again the same revision JU-3A Rev 6/12 came with the boxes in front of Grant and Deny. Their attention to this document was drawn by these facts:

  i. Why did she need a judge's signature to get the records? Dean Friend had claimed from the beginning, the record was sealed. Everytime he called that courthouse he was told, "It's a one page order Mr. Friend, your petition was denied. You're not the father."

  ii. Why did it look like there should be boxes beside Grant and Deny, why did it look like the x had been in the "is not" and the top and bottom of the box drawn back in? When the document is examined in a zoom that allows a pixel by pixel examination it is possible to see the scrubbed boxes in front of the grant and deny the remnants of the x in the "is not" and that the top and bottom of the box is clearly a pen line not printer pixels.

  iii. Why does every other time a judge in that court signed something, did the Clerk record a TEXT entry for the ORDER and what was ordered on the date that the Judge signed it or within a day? In this case there

72

are absolutely no entries in the case action summary from 8/8/2008 until 1/9/2014.  Supposedly, 11/19/2013, Judge Michael Bellamy on the day that the Governor of Alabama called him and informed him that he was being appointed to be the first ever Black Circuit Court Judge in Alabama ( a state and personally historic day)  and he was doing interviews as evidenced with a simple google search Regina Jernigan walked into the Clerk's office filed a request to unseal the record for herself and child support recovery at 12:48 PM and sometime that afternoon he had enough time to look everything over and decide to unseal the case, not to mention he was the District Court Judge not the Family Court Judge.  Then the order was given to the Clerk's office the following day and they just forgot to enter anything in the case action summary to document that the order was issued.

iv.    Finally, another heavy question, if the entire point of "Mother's Request" in 2013 that needed a Judge's order was to get the record to submit to the Child Support Recovery Division as evidenced by the reason she entered on the document, what ever came about with her request after she got her records?  What did she really want them for, if not to hang onto the golden ticket for 9 more years before going to ADHR and requesting retroactive support back to 2006 (Plaintiffs can prove Regina Jernigan had all their contact information since 2010, they also file their taxes every year and would easily be located by a child support recovery division.)

i.  DOCUMENT 15 was a billing statement from the Guardian Ad Litem Joanna
    C Parker aka Judge Funderburk's wife. She signed it 2/12/2007, the judge
    signed it 2/15/2007, JAM made a TEXT entry for receipt of the billing at 2:54
    PM in the case action summary and the Clerk stamped it 2/15/2007 at 3:50
    PM. This document's entry into the record was captured in the case action
    summary " 1/9/2014 10:50 AM ESCAN SCAN - FILED 2/15/2007 -
    AFFIDAVIT VIW". All the document markings match those of the ones
    added in 2014 not the ones that were there before the record was tampered
    with. She says "petition granted", but even the final order says petition
    denied, the case disposition says disposed petition denied. She never specifies
    what was granted. She never talks about the DNA tests, adjudication, or
    continuance. This document was withheld initially when the record was
    requested, it was billing for the minor's attorney.

j.  DOCUMENTS 16 & 17 are almost identical. They are both billing statements
    submitted by April Logan, attorney for Dean Friend. She withdrew before the
    final outcome but there is still very valuable information. DOCUMENT 16's
    entry into the record was captured in the case action summary " 1/9/2014
    10:54 AM ESCAN SCAN - FILED 3/23/2007 - AFFIDAVIT VIW". There
    was a corresponding SPEC entry from JCP $830.00 - ATTY LOGAN JCP at
    12:00 am. DOCUMENT 17's entry into the record was captured in the case
    action summary " 1/9/2014 10:55 AM ESCAN SCAN - FILED 2/7/2007 -
    AFFIDAVIT VIW". There was a corresponding TEXT ATTY FEE DEC FOR
    ATTY LOGAN, $830.00 JAM at 2:54 pm.

i.  She was the only attorney that correctly identified the nature of the case as he had filed it "visitation/paternity" as stated in her affidavit.

ii.  On 11/27/2006 April Logan contacted Dean Friend to see if he had the DNA results yet. She then contacted ADHR attempting to get the results. She contacted juvenile probation regarding test results, and left a message for Tonya Allen at ADHR. Spoke to Ms. Allen re ADNA test results. Spoke to Vickie at Clerk's office re test results. Left message for Dean Friend. Received and reviewed fax from ADHR regarding DNA test results.

iii.  She never says that she discussed DNA test results with Dean Friend. The next conversation she has with Dean Friend is regarding the continuance.

iv.  On 12/12/2006 April Logan wrote a letter to Client regarding continuance **NOT ADJUDICATION**. She certainly would have mentioned that happening. She also billed for drafting the income affidavit for Dean Friend.

v.  She then bills for remailing the correspondence and enters a withdrawal from the case. As stated the correspondence was located and as expected it does not mention an adjudication.

k.  Stating the obvious Joel Collins never submitted a billing statement, so there is no outcome written by an attorney for Dean Friend but there was an obvious recording of the entire December time period  and not one of the involved

75

attorneys ever used the word adjudicated or indicated the results of the DNA tests other then they were received.

115.    As of July 2023, Dean and Sandra Friend have reached out over the last year to all of the defendants.  If they could not reach them directly they spoke to their staff or attempted to write letters.  They also reached out to State Attorney Generals, Ethics Committees, Administrative offices of Courts, State and local Representatives, County Representatives and Senators both State and Federal.  At each level every attempt was made to avoid filing a federal civil rights complaint.  Every bell was rung and every drum was beat and the answer from each and everyone when the plaintiffs said, "You are leaving me no choice but to go to Federal Court," their reply was, "Do what you have to do."


## **INJURIES**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

116. Plaintiffs as of June 2023 have at least $40,070 provable losses in attorneys, ordered payments, document fees, supplies, filings, mailings, and property.  This number will continue to increase at a minimum of $525 per month for the next 11 months adding an additional minimum $5775 .

117.    Plaintiff Dean Friend lost in the initial fraud 2 acres in South Carolina, loss of $24,000 in 2005 dollars.  That includes payment on the home and materials.  He lost travel and work time for a hearing in Alabama that happened based on Regina Jernigan's lie that she was divorced valued at $5600.

118.    Plaintiff Dean Friend lost in the initial fraud supporting 3 additional people for 10 months at approximately $5500.  Believing Regina Jernigan was divorced based on her testimony and continued child support another $980 in child support receipts prior to filing petition.  After that he could not locate her or provide payments to the conclusion of hearing.

119.    Plaintiffs are sitting on ticking time bombs of maintenance issues that cannot be attended to and are very afraid what the long term costs will be for not attending to cars, tractor, zero turn lawn mower, brush hog; these cannot be calculated until they happen.

120.    Plaintiff Sandra Friend made her marital and family planning decisions based on the facts that she married a man with no minor children as of the conception of their only shared child in May 2010.

121.    Plaintiff Dean Friend on September 9, 2005 thought he had a daughter.  He found out February 8, 2007 that it didn't matter if he did or did not he could never legally be her parent.  He grieved for years.  He met his wife Sandra and was still a wreck.  She brought him back, showed him love, some people can be trusted, gave him a daughter, never held her over his head, never lived with one foot out the door and after years he healed enough to trust that she was real, she was his and he could get attached.  They put something real together, life threw blow after blow but they were together in sickness and in health, richer and poorer, good times and bad, but Regina Jernigan and the courts of Alabama saying Sandra Friend now has to share what she built from the ashes of Regina Jernigan's destruction that has to be the definition of deprivation of life and liberty.

122.    Plaintiff Dean Friend experienced two life threatening health episodes mid June 2023 both well documented to be triggered by stress hormones in diabetics. June 12, 2023 he was admitted to the hospital severely and dangerously dehydrated due to Hyperosmoler hyperglycemic state.  His blood sugar was 769 and he became aware for the first time that he now has diabetes and has to be on insulin.  Not wanting his family to starve, lose his home, or go to jail he was not able to take the time to find out why he had been so thirsty and feeling so drained and confused.  A couple days after surviving the HHS attack he then entered Diabetic Ketoacidosis requiring another hospital admission.

123.    Plaintiff Sandra Friend is not an attorney.  Learning about UIFSA, Alabama Court Procedure and Family Law, and Federal Civil Rights was not on the bucket list.  There are hundreds of hours taken because her expertise as a Software Engineer, Bachelor's Degree in Computer Science, the work she did building a document repository for a major credit card company, her work with digital imaging and document forensics made the irregularities in this record so obviously apparent.  Problem is no one understands her nerd speak about pixels and scan markings and back dating timestamps, so she had to find the laws to make them understand what was so clear.  In this case pictures should be worth a thousand words but no one would even look.

124.    Plaintiff minor HEF attended Girl Scout camp mid June annually.  The arrival of the interstate  child support action in May 2022 prevented  her attendance and directly impacted HEF 's decision to withdraw from Girl Scouts permanently.

125.    Plaintiff minor HEF has suffered a severe loss in quality of life since May 2022. Financially she has lost activities, clothing, vacations, birthday parties, Christmas presents. Physically she has increased anxiety, depression, and attends a school for students needing emotional support. Plaintiff parents have had to delay routine doctor and dental appointments.

126.    Plaintiff ERM has turned 16 and 17 since the start of this action. Plaintiffs Dean and Sandra Friend have been unable to properly recognize a child that has been in their lives and contributed to the family and continually built a strong parent child relationship. Significant birthdays and milestones have come and gone while resources have not been available that were earned.

127.    Plaintiff Dean Friend's credit report has had a derogatory account added by BCDRO. Even though Dean Friend knows this order to be illegal, he has complied and notified BCDRO of the humiliating and derogatory listing causing a score drop on all of his credit reports. This affects his ability to apply for employment at the Nuclear Plants, and forces him to accept less favorable terms or continue to drain personal savings or borrow from family in order to make ends meet.

128.    Plaintiff Dean Friend and HEF are distressed and disturbed that while almost everyone of the defendants at one time or another have said it's only 2 years of child support, just pay it. What they do not understand is that it is not 2 years of child support. The child support order creates a false adjudication that never happened that now makes a "Next of Kin " relationship to someone that has less than no relationship, there is a permanent alienation. That relationship is for as long as any of them have life.

129.    Plaintiff Sandra Friend asked her Primary Care physician to start and has titrated

to the maximum dose two antidepressants to assist with the major depression and

anxiety from "life's foot on her throat" starting after the child support demand in May

2022.

130.    Plaintiffs Dean and Sandra Friend have been married since October of 2009.

After the initial first year growing pains, the last 13 years anyone close to them can

bear witness that they have very little to fight about and have grown closer and

stronger every year.   Not a brain mass/surgery, motorcycle accidents, 2 shoulder

surgeries, multiple losses of employment, covid lock down, challenging children,

custody fight for ERM, two grandparents with dementia moving in, multiple massive

DIY home improvement projects, has placed the stress on them that this has.  The

threat of divorce is real and the fear that this stress, the fighting, the financial fears,

and what it is doing to the children has them clinging together praying for strength

but the distance and resentments are growing.

131.    Plaintiff Sandra Friend's father was diagnosed with Lewy Body Disease months

after the child support action was received. Precious time is lost and Plaintiff Sandra

Friend will forever have to wrestle with the choices to spend time protecting her

future over time with her Father.

132.    Plaintiff Sandra Friend's son, 16 at the time, and his girlfriend , 17 experienced

an unintentional pregnancy in August of 2022.  Sandra Friend became aware after it

was too late and the children had already decided to terminate the pregnancy the week

before with the aid of the girlfriend's mother, because he "was scared that it would

end up like this Regina stuff".  The children have still not recovered from their

decision.  It destroyed the relationship, pushed them each into a period of suicidal ideation.  This is a lifelong painful wound that will never fully heal for any of the family involved.

133.    Plaintiffs' family and friends keep their distance and they feel isolated.  The simple question of "How are you" has put distance between them and everyone they knew because this has completely taken over almost every aspect of their life for the last year, trying to get it to stop or get someone to help.  Plaintiffs' counters and tables have been covered with evidence, binders, pictures, laws, and cases for over a year.

134.    Plaintiffs dogs, a purebred Great Dane, Zeus, born March 9 2021 and rescue beagle Astro approximately 3 years old loved their time visiting at Happy Tails with other dogs and at the dog park.  They are unable to get their veterinary appointments and shots right now so they are also unable to leave the home and enjoy any of the things that they used to enjoy.

## **RELIEF**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes.  If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

WHEREFORE, the named plaintiffs request that this Court grant them the following relief:

a.  Declare that Judge Eric B Funderburk acting as the family court judge for the 26th District Judicial Court of Alabama, over the 2006-2007 Paternity/Visitation action, did not have

subject matter jurisdiction to enter a paternity adjudication, custody denial, or visitation in regards to Dean Friend and the minor child, SLF

b. Declare that defendants policies and practices violated Article 4 Section 1 Full Faith and Credit to the 2006 Alabama Uniform Parentage Act and the certified divorce records. Directly causing injury to plaintiffs.

c. Declare that Alabama Department of Human Resources officers, Pennsylvania Domestic Relations Office and all those involved in the 2022 court proceedings and orders violated, and continue to violate Plaintiffs' 4th amendment right to be secure in their "papers" and "effects".

d. Declare that defendants involved in the 2022 court proceedings denied plaintiff Dean Friend his 6th amendment right to question Regina Jernigan, see the statements against him, and denied plaintiff Dean Friend his 6th amendment right to a public trial by having closed door status conferences to which he was not permitted to attend and objected too.

e. Declare that defendants violated plaintiff Dean Friend's 9th amendment constitutional right to be protected against sex/gender discrimination even in our courts and state agencies that have not previously had acts enumerated.

f. Declare that the 26th Judicial Circuit Court of Alabama's Clerk of Court, Jodi Sellers and her employee/sister Joni Cauthen violated plaintiff's 14th amendment right to have material evidence upon their request. Withholding part of the court record and sending it as certified true and correct, withheld valuable proof of plaintiffs attendance at the February 8th hearing, the prior existence of DNA tests, and the attorney language repeatedly referring to the day in question as a continuance not an adjudication.

g. Declare that defendants deprived plaintiffs of property without due process violating their 14th amendment protection under the constitution. Defendants issued orders with no subject matter jurisdictions, presented false evidence, withheld material evidence, mutilated court records, offered no pre-deprivation course of action, made backroom deals without proper representation, and affirmed a void order that forces the same deprivation of property to the natural and proper heirs of plaintiffs.

h. Declare that defendants violated the Federal Uniform Interstate Family Support Act (UIFSA). Defendants have two states reporting and running their own calculations for support. Defendants ignored their legal responsibility to recognize and accept the collateral attack on Judge Eric Funderburk's subject matter jurisdiction and to dismiss the action. Defendants did not follow the law when defining Regina Jernigan as Obligee or Dean Friend as Obligor. Defendants further violated the UIFSA by not following the laws for entering the initial temporary order that began an accumulation of arrearages that caused negative collection actions.

i. Declare that defendants violated the Fair Credit Reporting act by falsely reporting a derogatory account to all three credit bureaus against the plaintiff Dean Friend.

j. Declare that defendants violated their own Alabama and Pennsylvania state laws not giving equal protection to plaintiffs afforded to others in their state.

k. Issue both retrospective and prospective injunctive relief to the illegal child support and all collection efforts.

l. Issue prospective injunctive relief disabling the minor child SLF from ever bringing a paternity action, past her age of majority, against plaintiffs or their estate.

m. Award plaintiffs the losses that can be calculated in property, payments, lost work, attorneys, and support listed in injuries at $81,925.00

n. Award plaintiffs additional losses as the court sees fit for costs that cannot be calculated for vehicles, and equipment, pets, medical, dental maintenance that cannot be done.

o. Award plaintiffs punitive damages as the court sees fit.

p. Award such other and further relief as the Court deems just.

ALTERNATIVELY, the named plaintiffs request that if this Court sees the adjudication of parentage as NOT void please grant them the following relief:

q. Award $18,000,000.00 to plaintiffs. That is one million dollars for each of the priceless minor years of a child that were stolen and alienated. On December 12, 2006, if Judge Eric B Funderburk did adjudicate Dean Friend and by the defendants own records, the attorneys (paid by the state of Alabama), and the clerk's office did not serve him notice of an adjudication, they ultimately gave Regina Jernigan a golden ticket to hold in her closet for 17 years and come for retroactive support after she let several other men play father for the child's entire minor life. The court gave plaintiff Dean Friend, plaintiff Sandra Friend and their minor children absolutely no avenue by which to establish any relationship with SLF and then are demanding that they share limited financial resources and future resources with a stranger that has a deep hatred and distrust for them.

r. Award $15,000,000.00 to plaintiffs. That is for the marital decisions and family planning decisions that were based on the fact that plaintiff Dean Friend was not the legal father and

was never adjudicated father of SLF, and long term care for minor children ERM and HEF and the detrimental effects this time has had on them.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, Information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted,

Date of signing: 07-09-2023

Signature of Plaintiff

Dean Friend

Date of signing: 7/9/2023

Signature of Plaintiff

Sandra McCann Friend